Saxon *v.* Arkansas State Fair Association.

Opinion delivered May 5, 1930.

*Barber & Henry* and *Troy W. Lewis,* for appellant.
*Dillon & Robinson,* for appellee.

BUTLER, J. Appellee brought suit in the Pulaski Circuit Court against appellant, its cause of action being based upon the following instrument.

"$300,000 ARKANSAS STATE FAIR ASSOCIATION $300,000

"The undersigned hereby subscribes for 500 shares of the capital stock of the Arkansas State Fair Association of Arkansas, of a total par value of $1,000. He will pay this amount to the Fair Association in the amounts and on the dates following:

| One-half in 1924 | One-fourth in 1925 | One-fourth in 1926 |
|---|---|---|
| $.......... is herewith; | $.......... by May 15; | $.......... by May 15; |
| $.......... by June 15; | $1,000 by June 15; | $.......... by June 15; |
| $.......... by July 15; | $.......... by July 15; | $.......... by July 15; |

"Immediately upon the full payment of the purchase price, the Fair Association will issue and deliver to the undersigned the number of shares hereby subscribed for, which shall be fully paid and non-assessable. NO PROMISES, REPRESENTATIONS, AGREEMENTS OR CONDITIONS HAVE BEEN MADE OR AGREED TO WHICH ARE NOT FULLY STATED HEREIN.

"Little Rock, Arkansas, 5-12-1924.
"Dr. R. L. Saxon."

In the court below it was agreed that appellant, defendant there, signed the above instrument, and that the appellee is a corporation organized under § 1796, C. & M. Digest, as a fair association with an authorized capital stock of $300,000, divided into 15,000 shares of $2 each par value. The incorporators made application to the Blue Sky Department of the Arkansas Railroad Commission for a permit to sell its stock before offering the same for sale to the public, and was informed by the Commission that no permit was necessary, and none was issued. Each year since the organization of the corporation, Arkansas Fair Association, it has conducted a fair at Little Rock where livestock and farm products, agricultural and other machinery, and merchandise of merchants and dealers in other commodities have been shown,

and the usual amusements, such as horse races, automobile races, Ferris wheels, etc., are conducted as a part of the fair. Entrance fees were charged to the public for admission, and space fees to those who desired to exhibit their goods, wares and merchandise and concession fees charged those who exhibited and disposed of goods, wares and merchandise to the assembled public who had paid to enter the fair grounds as spectators. From the money derived in this manner the association pays its current expenses, the excess cash, if any, to be expended by the board of directors of the association, but that no such excess cash had ever accumulated.

The articles of incorporation was introduced in evidence which declared the general nature of the business proposed to be transacted by the corporation was the holding of a periodical State fair in or near Little Rock, at which was to be shown the natural agricultural, mechanical and other products of the State, together with all such other exhibits of whatever kind or character as would tend to aid the advancement, progress and prosperity of the State. As incident to this purpose, the charter empowered the corporation to acquire collections of the products shown for the purchase or sale of real estate and personal property, for the erection of such buildings as would be necessary for the conduct of its operations, for making contracts, borrowing or lending money, etc., and further provided, "no dividend shall ever be declared or paid by the corporation, but all profits accruing and resulting from the conduct of its business or affairs shall be retained by the corporation, and be permanently employed in the enlargement or development of the enterprise."

First. It is the contention of appellant that the contract sued on is void under § 8, article 12, of the Constitution of this State which provided that no private corporation shall issue stocks or bonds except for money or property actually received or labor done and, second, that the transaction involved was in violation of § 8, of

act 242 of the Acts of 1915, (§ 757, C. & M. Digest), known as the "Blue Sky Law."

1. The answer to the first contention is that the instrument sued on is not a promissory note for the purchase of stock issued, but is a contract for the purchase of stock, payment to be made in the amount designated, and when such payment has been made the stock subscribed was to be issued and delivered. As this is the nature of the contract involved in this suit, it should be enforced according to its terms. This feature of this case is ruled by the opinion in *Thomas* v. *Ark. State Fair Assn.*, *ante* p. 748, to which we refer for further discussion of the question here presented, and for the authorities to support our view.

2. Sections 1796 and 1797, under which appellee was organized, provides: "That agricultural and mechanical fair associations and other associations of a public nature and designed to promote the public good, may be constituted bodies politic and corporate in the manner now provided by law for 'corporations for manufacturing and other lawful business,' and the capital stock may be divided and held in shares of two dollars each; no profits or dividends shall ever be declared or paid under this act; provided, dividends may be paid to the amount of money paid in by the stockholders on their respective shares.

"This act shall not be construed to prohibit such associations from being chartered and incorporated with the powers and privileges, and in the manner now provided by law."

The main idea in the formation of agricultural and mechanical fairs is to give object lessons to the people of new methods in the preparation of the soil, fertilization, cultivation of crops, and the use of modern machinery by which interest might be stimulated in agricultural pursuits and means and methods inculcated so that the toil of the farm might be lessened, and the rewards of labor increased. It is recognized that agriculture is be-

coming unremunerative, and, even with an adequate return on his investment and for his labor, the farmer is beset by many difficulties. When to these are added the small returns received by him, the agricultural situation is rendered most acute, and produces a threat which gives great uneasiness and the exodus from the farm has been notable within the last decade, so much so as to give general concern.

Associations, such as that in the instant case, have been organized from purely patriotic motives for the purpose of educating the farmer to the point where he may appreciate the dignity and beauty of his calling, and also encourage the use of modern methods in the operation of his farm and the application of business principles, by which his home may be beautified and his business rendered profitable and his labor lessened; the hope being that, when these ends are accomplished, the rural life and activities which have meant so much in the past and, in the opinion of many, are the nation's hope for the future, may be preserved.

The appellee association was not used for pecuniary gain, but exclusively for the purpose above stated, and, therefore, is both educational and benevolent, and as such is not within the purview of § 757, C. & M. Digest, by which a permit or certificate to sell its stock is required and must be obtained, but comes under clause E of § 752 of said Digest, which exempts from the requirements of § 757 "securities of any domestic corporation organized without capital stock and not for pecuniary gain, but exclusively for educational, benevolent, charitable or reformatory purposes."

While conceding that appellee association "is *quasi* educational in nature," appellant insists, because of the use of the words "exclusively educational" in paragraph E of § 752 *supra,* appellee association does not come within the exception, for, in addition to the exhibits, horse racing and harmless amusements are engaged in as a part of the fair. These amusements no more detract

from the exclusively educational nature of the association than do the swings and playgrounds in the school yard for the use of the children at stated intervals render a public school not ''exclusively educational.'' These are but incidents to the main purpose, and in aid of it, and it might be said that a certain amount of amusements are necessary in any educational enterprise. Since fairs are created to bring together those engaged in agricultural pursuits, stock raising, manufacturing farm implements, etc., so they may better discuss conditions and improve themselves in matters of farming and stock raising, and the amusement features are but to afford periods of relaxation. It is our opinion that the appellee association falls within the exemption of the statute, and may be said to be exclusively educational within its meaning, and therefore no permit was needed for the sale of its stock.

We think the holding of the court below was correct, and its judgment is affirmed.