[S. F. No. 17620. In Bank. Mar. 22, 1949.]

Estate of GUST BURNISON, Deceased. JOE BURNISON, Appellant, v. PHIL C. KATZ, as Public Administrator, etc., et al., Respondents.

Harry N. Grover and Everett H. Roan for Appellant.

Robert E. Hatch, J. Harold Decker and J. Frank Martin, Jr., as Amici Curiae on behalf of Appellant.

Abraham J. Harris, Acting Solicitor General, George T. Washington, Assistant Solicitor General, Frank J. Hennessy, United States Attorney, Robert B. McMillan and Clyde C. Downing, Assistant United States Attorneys, and John T. Fowler, Attorney, Department of Justice, for Respondents.

SPENCE, J.—This is an appeal from an order denying distribution of the decedent's estate to his heirs—three brothers, a sister, and 13 nieces and nephews—and sustaining the objections of the United States of America, the sole beneficiary under the terms of the will. The entire estate—consisting of personal property appraised at $22,668.70—was left to "The United States government U.S.A." Appellant maintains that the "United States of America is not authorized by statute or otherwise to take under a will executed in the State of California by a resident" thereof, that the testamentary "bequest" is therefore "void," and that all of the estate should be distributed to the "heirs at law of deceased under and pursuant to the laws of succession of" this state. His position is well taken under the prevailing statutory law applicable in determination of the issue involved.

At the outset it should be said that the authorities without exception hold that "the right to make testamentary

disposition of property is not an inherent right or a right of citizenship, nor is it even a right granted by the constitution. It rests wholly upon the legislative will, and is derived entirely from the statutes." (*In re Walker*, 110 Cal. 387, 390 [42 P. 815, 52 Am.St.Rep. 104, 30 L.R.A. 460]; see, also, *Estate of Carpenter*, 172 Cal. 268, 269 [156 P. 464, L.R.A. 1916E 498]; *Estate of Wilkinson*, 113 Cal.App. 645, 646 [298 P. 1037].) The Legislature may withhold the right altogether, or impose any conditions or limitations upon it which it chooses. (*Estate of Durlewanger*, 41 Cal.App.2d 750, 752 [107 P.2d 477]; *Estate of Bauer*, 51 Cal.App.2d 636, 637 [124 P.2d 630].) ▮ As a necessary postulate of this proposition, it follows that the Legislature has the exclusive power to designate those whom the testator may make the objects of his bounty. (*In re Wilmerding*, 117 Cal. 281, 284 [49 P. 181].)

▮ Equally well settled is the general rule that the distribution of a decedent's personal estate is governed by the law of his domicile. (*Estate of Sloan*, 7 Cal.App.2d 319, 333-334 [46 P.2d 1007].) It was early recognized in decisions of this state—as *Estate of Apple*, 66 Cal. 432, 436-437 [6 P. 7]; *Whitney* v. *Dodge*, 105 Cal. 192, 197-198 [38 P. 636]; *Estate of Lathrop*, 165 Cal. 243, 247 [131 P. 752]—and it is likewise declared by section 946 of the Civil Code.

In the light of these established principles, the language of section 27 of the Probate Code, prescribing "who may take by will," must be construed as determinative of the validity of the bequest here in question. That section reads as follows: "A testamentary disposition may be made to the state, to counties, to municipal corporations, to natural persons capable by law of taking the property, to unincorporated religious, benevolent or fraternal societies or associations or lodges or branches thereof, and to corporations formed for religious, scientific, literary, or solely educational or hospital or sanatorium purposes, or primarily for the public preservation of forests and natural scenery, or to maintain public libraries, museums or art galleries, or for similar public purposes. No other corporation can take under a will, unless expressly authorized by statute."

▮ The government cites the opening language of the statute, in its designation of "the state" as a proper recipient of a "testamentary disposition," as embracing the United States. But in construing a statute, words are to be taken in their ordinary sense and normal signification (23 Cal.Jur.

§ 109, p. 730; *Taylor* v. *Lundblade,* 43 Cal.App.2d 638, 641 [111 P.2d 344]; *Gayer* v. *Whelan,* 59 Cal.App.2d 255, 262 [138 P.2d 763]), and the government's suggested extension of the meaning of "the state" runs counter to this settled rule. Although it must be recognized that historians and other writers frequently use the literary or rhetorical expression and refer to the nation as "the state," the draftsmen of legislation as a rule employ language notable for its precise and definitive character rather than for its elegance. So it would appear that if the Legislature had intended to include the United States within the purview of the statute, " 'the ordinary dignities of speech would have led' to its mention by name." (*United States* v. *Cooper Corporation,* 312 U.S. 600, 606 [61 S.Ct. 742, 85 L.Ed. 1071], citing *Davis* v. *Pringle,* 268 U.S. 315, 318 [45 S.Ct. 549, 69 L.Ed. 974].) Also the collocation of the successively authorized recipients of a "testamentary disposition" should be taken into consideration in construing the meaning of the terms of the statute. (23 Cal.Jur. § 110, p. 732; *People* v. *One 1940 Chrysler Coupe,* 48 Cal.App. 2d 546, 549 [120 P.2d 117].) Here the collection of "the state" is with "counties" and "municipal corporations," an obvious incongruity if the government's contention were accepted.

Moreover, the statute uses the *definite* article in its mention of "the state," ostensibly to signify California and to distinguish its purport from the *indefinite* reference of "a state," which latter term might reasonably be construed to mean any established government on earth. So pertinent is the legislative history of section 27 of the Probate Code. As first enacted in 1872 as section 1275 of the Civil Code, it was provided that "no corporation" could take from a California testator "unless expressly authorized by statute" so to do. In 1873 the section was amended so that corporations "formed for scientific, literary, or solely educational purposes" might take under such a will. (Amendments to the codes, 1873-74, p. 275.) In 1881 a separate statute was enacted authorizing the "several counties, cities and counties, cities and towns of this state to accept . . . any gift, bequest and devise. . ." (Stats. 1881, p. 2.) · In 1903, section 1275 was amended to permit corporations formed for "hospital purposes" also to take under a will. (Stats. 1903, p. 258.) In 1905, the section was further amended to permit "counties" and "municipal corporations" to take under a California will, subject to the

provisions of section 1313, the antecedent of section 41 of the Probate Code concerning "restrictions" upon charitable bequests and devises (Stats. 1905, p. 605), and the code commissioner's note shows that "The amendment in substance incorporates into the section the provisions of the act of 1881, page 2, authorizing the several counties, cities and counties, cities and towns of the state, to recover property by gift, bequest and devise." (See legislative history subjoined to section 1275.) Manifestly, therefore, when "counties" and "municipal corporations" were so engrafted into section 1275, they carried the same geographical meaning of territorial components of this state as the "act of 1881" had expressly given them, and which they had signified for 24 years. Then in 1931, when, upon adoption of the Probate Code, the Legislature added to the list of entities privileged to take under a California will "the state" in connection with "counties" and "municipal corporations," it could not have meant any state other than California.

The case of *United States* v. *Fox*, 94 U.S. 315 [24 L.Ed. 192], is closely in point. There the testator, a resident of the state of New York, "devised and bequeathed" all his property "to the government of the United States." The statute of New York provided that a devise of lands might be made "to any person capable by law of holding real estate; but no devise to a corporation shall be valid unless such corporation be expressly authorized by its charter or by statute to take by devise." The sole question presented for consideration was "the validity of a devise to the United States of real estate situated in the State of New York." The Supreme Court of the United States declared (as the state court had, 52 N.Y. 530, 534 [11 Am.Rep. 751]) that "this question" was "to be determined by the laws of [New York]." (94 U.S. 320.) Then the court, speaking through Mr. Justice Field, stated at page 321 as follows: "The term 'person' as here used applies to natural persons, and also to artificial persons,— bodies politic, deriving their existence and powers from legislation,—but cannot be so extended as to include within its meaning the Federal government. It would require an express definition to that effect to give it a sense thus extended. . . . A devise to the United States of real property situated in that State [New York], is, therefore, void."

It is true that the New York law imposed limitations affecting only devises of "real estate" while the present case concerns the validity of a bequest of personalty under a statute

regulating alike the power of testamentary disposition as to real and personal property. But such difference in statutory scope does not militate against the applicable force here of the reasoning in the Fox case, based as it is on the right of a state to prescribe who can, and who cannot, take by the will of one of its residents. So significant is the case of *United States* v. *Perkins*, 163 U.S. 625 [16 S.Ct. 1073, 41 L.Ed 287], wherein the "single question" presented was "whether *personal* property bequeathed by will to the United States [was] subject to an inheritance tax under the laws of New York." (Emphasis added.) Recognizing the right to make a testamentary disposition as "purely a creature of statute and within legislative control" (p. 627), and that when a state "grants" such right, it may annex "any conditions which it supposes to be required by its interests or policy" (pp. 629-630), the court, following citation of the Fox case, *supra,* sustained the propriety of the tax—in "diminution" of the amount the United States would receive under the will—as it was "only upon [such] condition that the legislature assent[ed] to [the] bequest" (p. 630). And as recently as 1942 the Supreme Court of the United States in *Irving Trust Co.* v. *Day,* 314 U.S. 556 [62 S.Ct. 398, 86 L.Ed. 452, 137 A.L.R. 1093], wherein was sustained the validity of a section of the "New York Decedent Estate Law" concerning the right of a surviving spouse to elect to take against the provisions of a will, cited both the Fox and Perkins cases, *supra,* among others, in support of its broad statement at page 562, as follows: "Rights of succession to the property of a deceased, whether by will or by intestacy, are of statutory creation, and *the dead hand rules succession only by suffrance.* Nothing in the Federal Constitution forbids the legislature of a state to limit, condition, or even abolish the power of testamentary disposition over property within its jurisdiction." (Emphasis added.) (See, also, *Allen* v. *Markham,* 156 F.2d 653, 659; *Clark* v. *Allen,* 331 U.S. 503, 517 [67 S.Ct. 1431, 91 L.Ed. 1633, 170 A.L.R. 953].)

The government's contention that if section 27 of the Probate Code should be construed as invalidating the bequest in question, "serious constitutional questions would arise" involving an "unlawful discrimination against the United States" is effectively answered by the Irving Trust Co. case as above quoted. Likewise the attack upon the pertinency of the basic reasoning in the Fox case, *supra,* and the claim that assuming "the Fox case cannot be distinguished, it must

be regarded as overruled'' are without force in view of its citation as recently as 1942 by the Supreme Court as noted.

Nor does the reference in the last sentence of section 27 of the Probate Code to the testamentary capacity of a ''corporation ... expressly authorized by statute'' aid the government in its attempt to uphold the validity of the bequest in question. Whether or not the word ''corporation'' in such ''legislative environment'' would include the United States as a ''governmental body'' (see *State of Ohio* v. *Helvering*, 292 U.S. 360, 370 [54 S.Ct. 725, 78 L.Ed. 1307]; *State of Georgia* v. *Evans*, 316 U.S. 159, 161 [62 S.Ct. 972, 86 L.Ed. 1346]), the further requirement of the section is concededly unsatisfied in the government's admission that though ''various Federal statutes enacted from time to time have authorized particular agencies of the Government to acquire property by will and to apply it to stated uses ... no Federal statute of general application has purported to authorize the United States to so acquire property.'' ▇ It is true that the capacity of the United States to ''receive a voluntary devise or bequest'' has been regarded as an ''inherent attribute of sovereignty'' and so sustained as an implied power of the federal government, but such principle has no force where there is an ''express statute'' of the state wherein ''the testator had his domicil'' effecting ''a restriction as to who may be devisees or legatees.'' (*Dickson* v. *United States*, 125 Mass. 311, 315 [28 Am.Rep. 230].) In short, the entire matter of the right of testamentary disposition appears to be one within the control of the state having jurisdiction of the property in question, and there is no constitutional requirement that the state allow the United States to take ''under a will.'' (*United States* v. *Fox, supra*, 94 U.S. 315; *United States* v. *Perkins, supra*, 163 U.S. 625; *Irving Trust Co.* v. *Day, supra*, 314 U.S. 556.)

▇ Nor does it strengthen the government's position to refer to section 13841 of the Revenue and Taxation Code, which exempts ''property transferred to . . . the United States'' from the California inheritance tax. There is no necessary connection between a statute regulating succession to property and one setting forth tax exemptions, and in making laws relating to these two subjects, over which it had plenary authority, the Legislature was not bound to shape its respective enactments to fit any particular pattern or limit its right to impose such conditions as it deemed appropriate in the distinct fields. (*In re Wilmerding, supra*, 117 Cal. 281, 286-287.) There may be, for example, a transfer of property—

the residue of a veteran's pension fund—to the United States under the federal escheat laws (*Estate of Lindquist*, 25 Cal.2d 697, 705 [154 P.2d 879], cert. den. 325 U.S. 869 [65 S.Ct. 1408, 1410, 89 L.Ed. 1988]; *Estate of Walker*, 25 Cal.2d 719, 720 [154 P.2d 891], cert. den. 325 U.S. 869 [65 S.Ct. 1408, 1410, 89 L.Ed. 1988, 1989]) or in pursuance of a contract whereby a veteran, prerequisite to entry into a national soldiers' home, agreed that all his personal property should pass to the board of managers of such home under certain circumstances (*United States* v. *Stevens*, 302 U.S. 623 [58 S.Ct. 388, 82 L.Ed. 484]; *Mauck* v. *United States*, 94 F.2d 745). But such situations do not furnish any parallel considerations negativing the force of section 27 of the Probate Code as determinative of rights of testamentary disposition of property "within [the] dominion" of this state. (*United States* v. *Perkins, supra*, 163 U.S. 625, 629.)

The government finally relies on the *Estate of Hendrix*, 77 Cal.App.2d 647 [176 P.2d 398], to sustain the bequest in question, but an analysis of that case shows it to involve quite dissimilar considerations. There the bequest was made to the "United States Veterans Administration ... for the purpose of rendering to disabled veterans of the world war . . . such aid, comfort, [and] assistance ... as may to them be most helpful and profitable, determinable by said ... [organization]." (P. 649.) As the successor of "a corporation, 'The National Home for Disabled Volunteer Soldiers' " (p. 652), the "Veterans' Administration" is authorized, through its "Board of Managers," to "receive donations of money or property ... [which would] embrace gifts by means of wills, as well as by transfers during the lifetime of the donors." (P. 653.) Upon classifying the Veterans Administration as a ",governmental agency," though unincorporated, and in discussing its testamentary capacity to accept the bequest in question under the laws of California (Prob. Code, § 27), the court declared that "the bequest to the agency was, in effect, a bequest to the parent, United States of America" (p. 651), that "the United States Government is a corporation" (p. 652), that "the [agency] is authorized by statute to take property by will" (p. 652), and that therefore the United States Government, functioning through one ,of its component parts in a designated field of operation, is a "corporation ... expressly authorized by statute" to "take [property] under a will" within the purport of section 27 of

the Probate Code. (P. 653.) But the validity of the bequest there involved need not rest on that ground, for, as the court indicated in its reference to the analogous considerations prevailing in the *Estate of Yule,* 57 Cal.App.2d 652 [135 P.2d 386], the terms of the will, as reasonably construed, provided for "a gift for charitable purposes to a legally constituted institution" (p. 654), and whether or not such recipient was "incorporated" or "unincorporated" was not a material factor affecting its capacity to take the "donation" as so restricted. Accordingly, the bequest to the United States Veterans Administration was properly deemed valid in the light of the liberal provisions of the statute evidencing the legislative purpose to favor "gifts for charitable purposes" in pursuance of "the intent of the donor" (*Estate of Yule, supra,* p. 654), and the further discussion in the Hendrix case relative to the propriety of holding the "United States of America" to be a "corporation authorized to take by will pursuant to Section 27 of the Probate Code" (p. 650) was unnecessary to the decision, and certainly will not be regarded as furnishing ground for sustaining a bequest to the "United States Government," without qualification as to administration or purpose. From these underlying considerations—both factual and legal—distinguishing the essential focal point of decision, it is manifest that the government's reliance upon the Hendrix case in nowise strengthens its position here. In view of the nature of the power of testamentary disposition, the right of the state to determine the limits under which this power shall be exercised, and the express terms of section 27 of the Probate Code prescribing "who may take by will," the bequest here challenged cannot be sustained as meeting the test of the cited statute, and hence is void.

The order subject of this appeal is reversed.

Gibson, C. J., Shenk, J., Carter, J., and Schauer, J., concurred.

Edmonds, J., concurred in the judgment.

TRAYNOR, J.—I dissent for the reasons set forth in *Estate of Hendrix,* 77 Cal.App.2d 647, 651-653 [176 P.2d 398].