COUGHLIN, J.
 

 This is an appeal from an order in proceedings to determine heirship decreeing that the League of Women Voters of the United States, hereinafter referred to as the “League,” is entitled to inherit under the last will and testament of Olga A. Anderson, deceased.
 

 Decedent’s will bequeathed the residue of her estate in trust, and provided that the property remaining after compliance with the trust provisions should be delivered to the League.
 

 Dorothy B. Fairman, an heir-at-law of the deceased, instituted these proceedings; alleged that the League was not a corporation authorized to take a testamentary disposition under the laws of the State of California; and contended that, for this reason, the remaining trust property should be distributed to decedent’s heirs-at-law.
 

 Section 27 of the Probate Code designates those who may receive by testamentary disposition. Pertinent parts of this section provide: “A testamentary disposition may be made . . . to corporations formed for religious, scientific, literary, or solely educational. . . purposes ... or for similar public purposes. No other corporation can take under a will, unless expressly authorized by statute. ’ ’
 

 The trial court found that the League was a corporation “formed for . . . solely educational . . . purposes” and concluded that it was entitled to inherit.
 

 The evidence before the court consisted of a stipulation and certain exhibits, i.e., articles of incorporation, by-laws, publications of the League and its statement of claim.
 

 Besides contending that it is entitled to inherit as a corporation formed for solely educational purposes, the League also contends that it is entitled to inherit as a corporation “expressly authorized by statute” as well as under the provisions
 
 *537
 
 of law governing charitable trusts. However, the trial court reserved any findings upon these issues, placing its decision on the basis that the League was a corporation formed for solely educational purposes.
 

 Petitioner Fairman appeals from the order made, claiming that the evidence does not support the findings that the League was formed for solely educational purposes; that one of its purposes is political and not educational; and, consequently, that it is not entitled to take by testamentary disposition.
 

 The League’s articles of incorporation state: “The business and objects of the corporation shall be to promote political responsibility through informed and active participation of citizens in government; to render such other services in the interest of education in citizenship as may be possible; and to do every act appropriate or necessary to carry out any of the foregoing objects.”
 

 The corporation by-laws provide: “Sec. 1. Purpose. The purpose of the League of Women Voters of the United States shall be to promote political responsibility through informed and active participation of citizens in government.”
 

 Much of the League’s activity is described in its statement of claim, the allegations of which the court found to be true. Therefrom it appears that the League takes positions supporting certain legislative measures and opposing others; attempts to furnish its members with both sides of an issue; arrives at a position thereon through its own machinery of representative government; takes action on a position reached; and “through this method of operation not only educates its members upon the facts of the particular issue under study, but it also trains them in what it believes to be a sound method of arriving at decisions and proper and appropriate methods of taking action in support of a position arrived at upon the basis of impartial study.” It further is alleged in this statement of claim, that the League strives to establish and maintain a reputation as an organization that takes positions only when it has made a thorough study of the problems, and when it believes that the position it supports is in the public interest; that it does not take positions on the basis of preconceived ideas or for the purpose of advancing special interests. The operations of the League are supported by dues and contributions. Except as noted, there was no evidence respecting the purposes for which such funds are used.
 

 The by-laws also contain the following statement: ‘‘Sec. 2.
 
 *538
 
 Policy. The League may take action on governmental measures and policies in the public interest. It shall not support or oppose any political party or candidate.”
 

 The periodicals received in evidence contained news items or articles which may be described as being of a generally informative nature, besides expressing the recommendations and positions taken by the local Leagues and the national body, and urging the membership to participate in legislative enactment.
 

 Whether the evidence supports the conclusion of the trial court that the League is a corporation qualified to take under section 27 of the Probate Code, requires a consideration of the meaning of the definitive phrase “formed . . . for solely educational . . . purposes.” Due consideration must be given to the meaning and joint use of the three words “formed,” “solely” and “educational.” A synonym for the term “solely” is the term “exclusively” (Webster’s New International Dictionary, second ed., unabridged.) A definition of the term "educational ’ ’ as well as the meaning of the combination “solely educational” will be considered in the progress of this opinion.
 

 The application of a statute to particular facts must be done in the light of the rule that “a fair and reasonable interpretation must be made of all laws, with due regard for the ordinary acceptation of the language employed and the object sought to be accomplished thereby.”
 
 (Cedars of Lebanon Hospital
 
 v.
 
 County of Los Angeles,
 
 35 Cal.2d 729, 735 [221 P.2d 31, 15 A.L.R.2d 1045].) The code provisions in question do not come within the category of tax exemption statutes which public policy dictates should be strictly construed. They represent an expression of the sovereign will conferring the right to make testamentary disposition to designated entities.
 
 (Estate of Burnison,
 
 33 Cal.2d 638, 640 [204 P.2d 320].) Under the original code section this right was limited to natural persons and to corporations expressly authorized by statute to take by will. (Civ. Code, § 1275, as enacted in 1872.) The purpose of the law was neither to prevent nor to cure any evil. It has been purely enabling in character. The legislative history of the subject matter pictures an ever-extending scope of the right conferred.
 
 (Estate of Burnison, supra,
 
 33 Cal.2d 638, 641.) As judicial interpretation has pointed out limitations upon that scope the Legislature has enlarged it by amendment. (See
 
 Estate of Burnison, supra,
 
 33 Cal.2d 638, and Stats. 1951, ch. 223, § 1,
 
 *539
 
 p. 474, amending Prob. Code, § 27;
 
 Estate of Barter,
 
 30 Cal.2d 549, 559 [184 P.2d 305], and Stats. 1957, eh. 1875, § 1, p. 3177; and
 
 Estate of Doane,
 
 190 Cal. 412 [213 P. 53], and Stats. 1931, eh. 862, § 341, p. 1799, supplanting former Cal. Civ. Code, § 354.) Under the general corporation law of California (Corp. Code, tit. 1, div. 1, pt. 3) “Every corporation may . . . take real and personal property by will, gift, or bequest.” (Corp. Code, § 802.) These provisions “apply to every private corporation, profit or non-profit, . . . unless the corporation is expressly excepted from the operation thereof, or there is a special provision applicable to the corporation inconsistent” therewith. (Corp. Code, § 119.) Authority to take by will also is conferred on California organized nonprofit corporations (Corp. Code, § 9501), charitable corporations (Corp. Code, § 10206), and corporations sole. (Corp. Code, § 10007.) Corporations coming within the foregoing provisions of the law would qualify under section 27 of the Probate Code as corporations “expressly authorized by statute.”
 

 At the outset it should be noted that the finding of the trial court is directed to the purposes for which the League was formed and not to its activities. This is in accord with the provisions of section 27 of the Probate Code which is likewise directed. The activity of a corporation may be indicative of the purposes for which it was formed but is not controlling. This observation is pertinent to the instant case in that the news items and periodicals appearing in the record might support a finding that the League has been engaged in other than educational activities, but do not control the determination of the court respecting the purposes for which the League was formed. The same observation should be directed to the narration of activities of the League contained in its statement of claim, which also is a part of the record.
 

 As the evidence in this matter is subject to conflicting inferences with respect to the foregoing and other aspects of the case, it must be remembered that “it is the time honored rule that all substantial conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the findings if possible.”
 
 (Richter
 
 v.
 
 Walker,
 
 36 Cal.2d 634, 640 [226 P.2d 593]), and that of two conflicting inferences, the one which will support the judgment must be accepted.
 
 (Estate of Bristol,
 
 23 Cal.2d 221, 223 [143 P.2d 689].)
 

 In determining the purposes for which the League
 
 *540
 
 was formed the trial court was entitled to accept the statement of purposes set forth in its articles of incorporation and by-laws. As therein related, the purposes of the corporation are to “promote political responsibility through informed and active participation of citizens in government; to render such other services in the interest of education in citizenship as may be possible; and to do every act appropriate or necessary to carry out any of the foregoing objects.” It is noteworthy that the purpose of the League related in the first clause of the foregoing quotation is not merely to “promote political responsibility,” but to promote such responsibility “through informed and active participation of citizens in government. ’ ’ To effect an informed participation by citizens in government requires the application of educational processes. To effect an active participation of citizens in government likewise involves educational processes, including that of applying theory to practice. The activity of the League confirms these concepts, as noted in that part of the statement of its claims declaring that “the League through this method of operation not only educates its members upon the facts of the particular issue under study, but it also trains them in what it believes to be a sound method of arriving at decisions and proper and appropriate methods of taking action in support of a position arrived at upon the basis of impartial study.” The trial court found the foregoing statement to be true. The second clause of the quotation setting forth the purposes of the League refers to the rendition of
 
 “other
 
 services in the interest of education in citizenship” indicating an intention that the objects defined in the first clause of that paragraph were “services in the interest of education in citizenship.” (Emphasis added.)
 

 Petitioner lays stress on the section in the by-laws which provides: ‘'Sec. 2. Policy. The League may take action on governmental measures and policies in the public interest. It shall not support or oppose any political party or candidate. ’ ’
 

 This section outlines a policy for as distinguished from a purpose of the League. It may be interpreted as establishing a policy that the League might take action on governmental issues in the public interest as a part of an educational program of implementing theory by practice, or teaching by participation, but might not do so with respect to matters involving a political party or a candidate for public office. The trial court was entitled to find accordingly.
 

 Petitioner contends that the League has engaged in activities of a political nature and has attempted to influence legislation.
 
 *541
 
 Such a fact would not prove that the purposes for which it was formed, or that the activities in which it actually has engaged were not solely educational. The distinction between the purposes for which it was formed and its activities, as well as a distinction between the purposes for which it was formed, the subject matter to which those purposes are applied and the process by which those purposes may be accomplished must be kept in mind. Language defining the scope of an educational purpose does not change the character of that purpose. The educational purpose of a corporation may be directed to development in literary, scientific, commercial or political areas without changing the purpose of that corporation to one described as literary, scientific, commercial or political. As heretofore noted, the purpose of the League was not to “promote political responsibility” but to “promote political responsibility through informed and active participation of citizens in government.” In substance, the educational purposes of the League are directed to the area of political responsibility.
 

 “ ‘Education’ as understood today, connotes all these processes cultivated by a given society as means for the realization in the individual of the ideals of the community as a whole. It has for its aim the development of the powers of man (1) by exercising each along its particular line, (2) by properly coordinating and subordinating them (3) by talcing advantage of the law of habit, and (4) by appealing to human interest and enthusiasm. It includes not only the narrow conception of instruction, to which it was formerly limited, but embraces all forms of human experience, owing to the recognition of the fact that every stimulus with its corresponding reaction has a definite effect on character. It may be either mainly esthetic, ethical, intellectual, physical or technical, but to be most satisfactory it must involve and develop all these sides of human capacity.”
 
 (Weyl
 
 v.
 
 Commissioner of Internal Revenue,
 
 48 F.2d 811, 812;
 
 Langbein
 
 v.
 
 Board of Zoning Appeals,
 
 135 Conn. 575 [67 A.2d 5].)
 

 Education involves many features among which are research, teaching and learning. All of these may involve the acquisition of knowledge by active participation in the field which is subject to education. A mechanic may learn through an apprenticeship ; the law student engages in moot court; the nurse embarks on a training program; the doctor has an internship; and the teacher participates in practice teaching. Applying these precepts to the present case, we conclude
 
 *542
 
 that “active participation of citizens in government” is part of an educational program to promote political responsibility even though such participation may influence legislation. Participation in musical programs to promote an appreciation of music, in athletic contests to promote healthy bodies, or in medical clinics to promote advancement in medicine, are examples of the application of similar educational processes to a specific field in the fulfillment of an educational purpose. In
 
 Saxon
 
 v.
 
 Arkansas State Fair Assn.,
 
 181 Ark. 750 [27 S.W.2d 505, 506], the court held that conducting an agricultural fair conformed to a solely educational purpose in that it gave object lessons to the people of new methods in the preparation of the soil, fertilization and cultivation of crops, and the use of modern machinery, and further held that the exclusive character of this purpose was not defeated by conducting horse racing and amusements as a part of the fair, because these were incident to the main purpose and in aid thereof.
 

 In support of her position, petitioner has cited tax eases holding that the League or one of its subsidiaries, because of its activities, was not entitled to a tax exemption under a law extending such an exemption to an organization operated exclusively for educational purposes providing no substantial part of its activities consisted of attempting to influence legislation.
 
 (Seasongood
 
 v.
 
 Commissioner of Internal Revenue,
 
 227 F.2d 907;
 
 Noyes
 
 v.
 
 Commissioner,
 
 31 B.T.A. 121.) These citations are authority for the conclusion that the League has engaged in political activity. They are not authority for the conclusion that the League was formed for political purposes, nor are they authority for the conclusion that the political activity in which the League was engaged was antagonistic to a solely educational objective.
 

 The League cites three tax decisions, involving the same law, in which it was held that certain local leagues were tax exempt. Of necessity these decisions required a finding that the leagues were “operated exclusively for . . . educational purposes.”
 
 (Smith
 
 v.
 
 Commissioner,
 
 3 T.C. 696;
 
 Liberty Nat. Bank & Trust Co.
 
 v.
 
 United States,
 
 122 F.Supp. 759;
 
 Dahlinger
 
 v.
 
 Commissioner of Internal Revenue,
 
 20 B.T.A. 176, affirmed 51 F.2d 662.) These cases recognize the fact that an organization operated exclusively for educational purposes may engage in political activity without destroying the exclusively educational character of its operation.
 

 In
 
 League of Women Voters
 
 v.
 
 United States,
 
 180 F.Supp. 379, 383, the United States Court of Claims, although deter
 
 *543
 
 mining that the League was engaged in activities to influence legislation and denying its claim for an estate tax deduction under the law heretofore noted, stated:
 

 “. . . As we have said, we have no doubt of the League’s status as an educational organization. The education of public-spirited women so that they may, by their agreed opinion diligently and intelligently arrive at, influence legislators or influence others to influence legislators to reach right decisions, is education of the most useful and laudable kind. But a gift to such an educational institution cannot qualify for a tax deduction under Section 812 (of 1939 Internal Revenue Code).”
 

 The dissenting opinion described the activities of the League in the following language (p. 386) :
 

 “. . . It is clearly not the type of organization which the Congress meant to exclude from the benefits of the tax-exemption section. The activities of the League are in no sense partisan. It is almost wholly educational in its nature. It undertakes to present both sides of every issue to its various integral branch organizations, does not undertake to prejudice the issue but undertakes to reflect the sentiment of the various local bodies which have been reached after thorough consideration and discussion. A very small part of the activities of the organization as a whole is devoted to influencing legislation and none at all to influencing legislation that would inure solely to the benefit of the national organization and its integral chapters.”
 

 In
 
 Weyl
 
 v.
 
 Commissioner of Internal Revenue,
 
 48 F.2d 811, 812, where it was held that the League for Industrial Democracy was a corporation organized and operated exclusively for educational purposes, the court said: “The fact that its aim may or may not resemble that of a political party does not of itself remove it from the category of an association engaged in educational work. ’ ’
 

 Implicit in the finding of the court that the League was formed for solely educational purposes, is the evidentiary supported determination that it was formed to render “services in the interest of education in citizenship,” including those essential to an informed and active participation of citizens in government and that the area of activity subject to these services was the development of political responsibility.
 

 Evidence of political activity accompanying the League’s educational program of active participation in government, i.e., of learning by putting into practice concepts respecting
 
 *544
 
 the manner in which legislation may be influenced, and of any consequent influence on legislation, does not necessitate a finding that it was formed for purposes of engaging in politics or influencing legislation, or that it was not formed for solely educational purposes, or that its activities in pursuit of those purposes are not solely educational. The trial court was entitled to find that any activity of the League which influenced legislation was a by-product of its solely educational purposes; an incident to its activities in the pursuit of those educational purposes; and that this by-product or incident did not change, supplant or encroach upon the exclusive character of those purposes.
 

 The term “exclusively” as applied to situations covered by statutes exempting from taxation property used exclusively for hospital, religious, or charitable purposes has not prevented the application of the exemption provisions to property used by a hospital as a nurses training school, to supply housing facilities for nurses, interns and resident doctors, or as tennis courts for their recreation even though, as an incident to such uses, the private educational interest of the student nurses or the housing or recreational needs of the persons using such facilities have been served
 
 (Cedars of Lebanon Hospital
 
 v.
 
 County of Los Angeles,
 
 35 Cal.2d 729 [221 P.2d 31, 15 A.L.R2d 1045]); nor to property used by a religious order as permanent living quarters for its priests and lay brothers in connection with its operation of a retreat house even though, as an incident to such use, the temporal needs of those persons were served
 
 (Serra Retreat
 
 v.
 
 County of Los Angeles,
 
 35 Cal.2d 755 [221 P.2d 59]) ; nor to property owned by a Y.M.O.A. and used as a dormitory in connection with the religious and charitable purposes of the organization although a charge was made for such accommodations and, as an incident to their use, the housing needs of individuals were served.
 
 (Y.M.C.A.
 
 v.
 
 County of Los Angeles,
 
 35 Cal.2d 760, 768 [221 P.2d 47].) It is apparent that the exclusive use of property for a particular purpose incidentally may serve other purposes. So, also, may a corporation formed for solely educational purposes effect the accomplishment of a political purpose as an incident to the purposes for which it was formed. The finding of the trial court sustains this view of the evidence in the ease at bar.
 

 In support of a contrary conclusion, petitioner places substantial reliance upon the decisions in
 
 Leubuscher
 
 v.
 
 Commissioner of Internal Revenue,
 
 54 F.2d 998, and
 
 Better Business
 
 
 *545
 

 Bureau
 
 v.
 
 United States,
 
 326 U.S. 279 [66 S.Ct. 112, 90 L.Ed. 67]. In the former case it was held that a bequest to the Manhattan Single Tax Club was not ‘ ‘ exclusively for . . . educational purposes” within the meaning of the law which exempt it from an estate tax. The purpose of the Club was two-fold, i.e., (1) to “advocate” the adoption of the single tax and (2) “to promote social intercourse among single tax people.” The second purpose clearly is not educational. As to the first, the court held that advocating the cause of the single tax, including the dissemination of controversial propaganda to accomplish the specific purpose of effecting a change in the existing system of taxation, which was the purpose of the person proposing it, was not exclusively educational. There is nothing in the League’s articlés of incorporation or by-laws declaring any purpose to effect a change in existing laws. It is not within the stated objects of the League to accomplish the purpose of any individual or any group of individuals. In the other case cited, i.e.,
 
 Better Business Bureau
 
 v.
 
 United States, supra,
 
 326 U.S. 279 [66 S.Ct. 112, 90 L.Ed. 67], the court held that the bureau was not a corporation organized and operated “exclusively for . . . educational purposes” because the evidence established that its primary pursuit was “to promote not only an ethical but a profitable business community.” This case does not present facts analogous to the case at bar. In the course of its opinion the court said that (p. 283) : “. . . in order to fall within the claimed exemption, an organization must be devoted to educational purposes exclusively. This plainly means that the presence of a single non-educational purpose,
 
 if substantial in nature,
 
 will destroy the exemption regardless of the number or importance of truly educational purposes.” (Emphasis added.) This statement is an express recognition of the fact that the exclusively educational character of the purposes of a corporation will not be destroyed by the presence of noneducational purposes which are not “substantial in nature” and conforms to prior decisions by that court.
 
 Trinidad
 
 v.
 
 Sagrada Orden de Predicadores,
 
 263 U.S. 578 [44 S.Ct. 204, 68 L.Ed. 458], considered the status of a corporation organized exclusively for educational purposes and held that activities which are incident to the main purpose of the corporation, to assist it in carrying out its educational program, did not affect its classification as an exclusively educational institution. Other federal cases accept the same concept. In
 
 Roche’s Beach, Inc.
 
 v.
 
 Commissioner of Internal Revenue,
 
 96 F.2d 776, where the exclusive
 
 *546
 
 nature of the educational purpose of an organization was under consideration the court held that the operation of income producing activities, if incidental to the purposes of the organization, did not offend against the meaning of the term “exclusively” in its broad and practical sense. In
 
 Oklahoma State Fair & Exposition
 
 v. Jones, 44 F.Supp. 630, the plaintiff contended that it was not required to pay social security tax payments because of the exemption extended to corporations engaged in operations for exclusively educational purposes even though it received funds from amusement features conducted in connection with the operation of a state fair and exposition. The court upheld this contention upon the grounds that the funds were necessary to carry out the corporation’s educational purposes and were an incident to those purposes.
 

 We conclude that a broad interpretation of the statutory terms under consideration should be invoked in view of the nature of the statute, the legislative history pictured by its amendments and the inclusive effect of the Corporations Code on domestic corporations; that a corporation formed solely for educational purposes may define the area to which its activities in education shall be directed; that this area may include political subjects; that the application of educational processes to such political subjects does not destroy the exclusive character of the purposes of such a corporation; that the application of theory to practice by participation in government may be an educational process; that political activity or the influencing of legislation which may arise as a by-product or an incidental result of an educational process applied by such a corporation, does not require a finding that its purposes are not solely educational; that a reasonable interpretation of the articles of incorporation and by-laws of the League support a conclusion that its purposes are solely educational; that the evidence respecting the activities of the League substantiates such a conclusion; and that the finding of the trial court that the League was formed for such purposes is sustained by the record.
 

 The order is affirmed.
 

 Griffin, P. J., and Shepard, J., concurred.
 

 A petition for a rehearing was denied May 2, 1960, and appellant’s petition for a hearing by the Supreme Court was denied June 2, 1960. Peters, J., was of the opinion that the petition should be granted.