9 Cal.App.3d 479 (1970)
88 Cal. Rptr. 229
Estate of CARL ALFRED CARLSON, Deceased.
LOUIS BATTAGLIA, as Executor, etc., Petitioner and Respondent,
v.
SOCIALIST LABOR PARTY OF CALIFORNIA, Claimant and Appellant,
STATE OF CALIFORNIA, Claimant and Respondent.
Docket No. 12225.
Court of Appeals of California, Third District.
July 8, 1970.
*480 COUNSEL
Arthur Brunwasser for Claimant and Appellant.
Panattoni, Corsiglia & Bertolani for Petitioner and Respondent.
Thomas C. Lynch, Attorney General, and William J. Power, Deputy Attorney General, for Claimant and Respondent.
OPINION
PIERCE, P.J.
In proceedings instituted by petition of the executor of the above captioned estate advice of the probate court was sought to determine heirship as between the Socialist Labor Party of California, an unincorporated association, and the state itself. The former, under decedent's will in probate, is the sole primary legatee, but the State of California becomes the sole beneficiary if the Socialist Labor Party is unable to take the estate "for any reason, legal or otherwise." The probate court, by its findings and judgment, held in favor of the state; the Socialist Labor Party appeals.

THE FACTS
Mrs. Jean Steiner was the only witness. She was called by the Socialist Labor Party (which we will call "the party.") She is its state secretary. She testified its primary purpose was to advance the cause of socialism. The party had nominated (unsuccessful) candidates for public office. The party reconciled to failure deemed education of the people and stimulation *481 of public discussion of various social problems to be adequate reward for its activities. These activities included the publication of "The Weekly People" and distribution of pamphlets  all carried on at a loss. We judicially notice that the party[1] was organized in 1877, the result of a merger of the National Labor Union, the North American Federation of the International Workingmen's Association and the Social Democratic Workmen's Party and was first known as the Workmen's Party of the United States.[2] No claim of present status as a labor organization is made by the party.

THE POWER TO MAKE A WILL
(1) "The right to make a will is not a natural right, not a right of property. Originating in the Statute of Wills (32 Hen. VIII, ch. 1, July 20, 1540), it is an ancient right but not inalienable.... [i]t is purely statutory; subject to complete control by the Legislature. [Citations.]" (Estate of Nicely (1965) 235 Cal. App.2d 174, 184 [44 Cal. Rptr. 804] (hg. den.).) The case cited  an opinion of this court authored by the writer  errs in one respect. We said: "The testamentary act is not protected by any constitutional provisions...." (P. 184).) That is incorrect. Testamentary gifts are expressly authorized to specific education institutions, e.g., California and Stanford (Cal. Const., art. IX, §§ 9 and 10).

CORPORATIONS DISTINGUISHED FROM UNINCORPORATED ASSOCIATIONS AS REGARDS THE RIGHT TO INHERIT
The party is an unincorporated association. From the very early history of the state the Legislature has classified corporations separately from unincorporated associations with respect to the right of inheritance. In the early law of California an unincorporated association was not recognized as a separate legal entity and could not acquire or hold property at all. (Grand Grove etc. of Cal. v. Garibaldi Grove etc. of Cal. (1900) 130 Cal. 116, 119 [62 P. 486].) A corporation, however, was and is, in legal contemplation, a "person" separate from its shareholders or members. Perhaps that explains why we find consistent separation of the two in the statutes relating to the right of inheritance.
(See statutes and cases collected in California Nonprofit Corporations *482 (Cont. Ed. Bar) § 1.4, pp. 4-7; 3 Witkin, Summary Cal. Law (1960) Unincorporated Associations, § 16, p. 2315.)
California's Probate Code section 27, "Who May Take by Will," was enacted in 1931 and has been amended in 1951, 1957 and 1961. As originally enacted it was based upon Civil Code section 1275 enacted in 1872. (Code Amend. 1873-1874, ch. 43, p. 275.) As originally enacted testamentary disposition was limited to natural persons and corporations "formed for scientific, literary, or solely educational purposes." The 1901 amendment (Stats. 1901, ch. 157, p. 402) enlarged the scope of legatees and devisees to counties, municipal corporations and to corporations for religious purposes. Probate Code section 27, enacted in 1931, and as amended in 1951 (Stats. 1951, ch. 223, p. 474) broadened such scope further by including the United States and any state and also added: "unincorporated religious, benevolent or fraternal societies or associations or lodges ... and to corporations formed for religious, scientific, literary, or solely educational or hospital or sanitarium purposes, or primarily for the public preservation of forests and natural scenery, or to maintain public libraries, museums or art galleries, or for similar public purposes." Thus, as of 1931 there was a very conscious recognition of differences by the Legislature regarding the respective powers of corporations and unincorporated associations to inherit. A 1961 amendment threw the doors wide open to corporations as legatees. Former limitations as to the types of corporations who might inherit were deleted. Limitations relating to unincorporated associations remained unaffected. (Stats. 1961, ch. 2027, p. 4238.) The language of the statute is (again) so explicit we must recognize legislative design rather than inadvertence.
Duplicative provisions granting the right of religious, benevolent and fraternal unincorporated associations (also extending the right to labor organizations) to inherit are now set forth in Corporations Code section 21200.

THE PARTY AS A "CHARITABLE" ASSOCIATION
(2) Neither of the statutes affecting unincorporated associations to which we have referred (or to which we have been referred) specifically mentions testamentary gifts for "charitable" purposes. Both Probate Code section 27 and Corporations Code section 21200 do allow such gifts to unincorporated "benevolent" associations. By definition, "charitable" and "benevolent" are synonymous. (Webster's Third New Internat. Dict. (Unabr).) The party argues it is a charitable organization. It likens itself to the League of Women Voters which in Estate of Anderson (1960) 179 Cal. App.2d 535 [3 Cal. Rptr. 697] (hg. den.), it was held, could take by will. The case is (and the organizations are) distinguishable. The *483 League is a nonprofit corporation. Every nonprofit corporation can (and could in 1960) take property by will. (Corp. Code, 9501, subd. (c); Estate of Mealy (1949) 91 Cal. App.2d 371 [204 P.2d 971]; (N.B., the "Peoples Daily World," the newspaper there involved  a nonprofit corporation  is not to be confused with "The Weekly People" here involved which is unincorporated and published by an unincorporated association).) Moreover, in Anderson the League was held solely educational in origin and purpose. That the party may properly claim to have some purposes which are educational we do not doubt. Its purposes are not "solely educational."
Estate of Holtermann (1962) 206 Cal. App.2d 460 [23 Cal. Rptr. 685], relied upon by the party, is inapplicable. It held the Knights of Columbus, an unincorporated association, to be eligible to take by will. The basis of the decision is that it was so empowered under Corporations Code section 21200. We cannot quarrel with the holding. That section covers "benevolent" and "fraternal" unincorporated associations, a category into which the Knights of Columbus undoubtedly falls. The party here does not fall into that category. It is a political party. Certain language from the Holtermann opinion is stripped from context, to wit, "In the light of the Corporations Code as it is today, it would appear that the Legislature in 1961 was merely modernizing section 27 and thus included all unincorporated associations, lodges, etc., and all corporations.
"Under section 27, such associations and corporations may take property regardless of purpose." (P. 469.) We deem this dicta overly broad as applied to unincorporated associations.

REBUTTAL
The foregoing is the opinion of the majority of this court. It will be followed by the dissent of one of its members. That dissent would hold that Probate Code section 27 and Corporations Code section 21200 would be unconstitutional as offending California constitutional provisions: article I, section 11 (demanding uniform operation of general laws), article I, section 21 (prohibiting unequal grants of privileges) and article IV, section 16 (prohibiting special laws when a general statute can be made applicable)  except for the fact that the curse can be removed by reading into the otherwise invalid statutes a provision granting to unincorporated political parties the right to take by will. The result of such a decision would be sweeping. If courts may confer the will-making power upon unincorporated political parties, the judicial will-making power would seem almost limitless. Conceptually and historically no principle is more firmly implanted in the common law than that which holds that only the Legislature (or the people acting directly and affirmatively in specific cases in the Constitution) can confer the right to inherit. That, the dissent expressly *484 concedes. A political party is not a fraternal organization and bears no resemblance thereto. That, the dissent also concedes. To attempt, therefore, to invent a legislative intent in this matter is sheer hocus pocus. What the dissent does do, therefore, is to transfer to the courts the power to grant the will-making right, not through the process of statutory interpretation, but by going through a more involved convolution of saying that if the Attorney General "suggests no consideration of public need, interest or policy which justifies this grant of privilege" to one group without granting it to another wholly separate but (in the belief of the judiciary) equally deserving group, the courts will create a wholly fictitious "statutory interpretation" supplying a legislative intent. That is judicial legislation  baldly, undoubtedly and unequivocally. Its logic escapes us. Had the dissent reasoned that the existing code sections were invalid because they offend the constitutional standards specified, we could understand such reasoning. But the result in that event would be concurrence with the result reached by the majority.
The case cited in support of the proposition that "[c]onstitutional limitations must be read into a statute which would be otherwise unconstitutional," County of Los Angeles v. Riley (1936) 6 Cal.2d 625 [59 P.2d 139, 106 A.L.R. 903], does not support the statement as applied to the facts of this case. There an appropriation payable out of the general fund was to be used in part by the counties. The Supreme Court pointed out counties were political subdivisions of the state performing many state duties. Therefore the court would assume that the Legislature had intended that the moneys be used for state purposes since such an appropriation for local purposes would violate the state Constitution; and it would not be deemed that the silent statute had intended to violate the Constitution. It scarcely seems necessary to compare that holding to a proposal that the Legislature when it empowered fraternal organizations to take by will must have intended to include political parties  and, if political parties, all other unincorporated associations which the judiciary might deem equally deserving.
As the majority of this court sees it, we never reach the question whether the code sections mentioned are valid. We observe in closing that the courts have held that the tests of constitutionality where the issue is a general versus a special law are essentially the same as where the issue involves the equal protection clause of the federal Constitution. (County of Los Angeles v. Southern Cal. Tel. Co. (1948) 32 Cal.2d 378, 389 [196 P.2d 773].) All presumptions are in favor of the validity of statutes; and a classification made by the Legislature will not be overthrown by the courts unless it is palpably unreasonable. (Id. p. 392.) The rule is frequently stated that there must be some distinction natural or intrinsic or constitutional. *485 (See e.g., Martin v. Superior Court (1924) 194 Cal. 93, 100 [227 P. 762].)
(3) The Legislature in granting or withholding the right to some unincorporated associations and not to others may not, in our opinion, have acted wisely. But "it is not our province to weigh the desirability of the social policy underlying the statute or to question its wisdom. (See Allied Properties v. Department of Alcoholic Beverage Control, 53 Cal.2d 141, 146 [346 P.2d 737].) These are purely legislative matters." (People v. Aguiar (1968) 257 Cal. App.2d 597, 602 [65 Cal. Rptr. 171] (hg. den.).) Exceptional diffidence, we believe, should attend a court's superimposition of its own beliefs in the matter of an exercise of control over the right to inherit.
Judgment is affirmed.
Regan, J., concurred.
FRIEDMAN, J.
I dissent. A statute is unconstitutionally discriminatory when it permits one testator to leave property to a social group (such as an unincorporated fraternal association) and denies another the power to bequeath property to some other kind of association; such a statute unconstitutionally discriminates not only among testators, but also among the affected organizations and their members.[1]
Probate Code section 27 permits testamentary dispositions to "unincorporated religious, benevolent or fraternal societies or associations or lodges or branches thereof...." Corporations Code section 21200 permits "[a]ny unincorporated benevolent or fraternal society or association, and every lodge or branch of any such society or association, and any labor organization" to take by will.
It is difficult to accept the proposition, advanced in Estate of Holtermann, 206 Cal. App.2d 460, 466-469 [23 Cal. Rptr. 685], that these statutes bespeak a legislative intent to permit all unincorporated associations to take by will. That appraisal of legislative intent transforms the specific statutory descriptions into surplusage. The language of these statutes simply does not justify that appraisal. I would reach the conclusion stated by Holtermann but by a different route  construing the statute to avoid unconstitutionality. *486 Constitutional limitations must be read into a statute which would be otherwise unconstitutional. (County of Los Angeles v. Riley, 6 Cal.2d 625, 627 [59 P.2d 139, 106 A.L.R. 903].)
According to established California doctrine, the right to bequeath property by will is not an inherent individual right; the Legislature may withhold the right or impose conditions or limitations of its own choice; the Legislature has exclusive power to designate those to whom a testator may leave property.[2] The doctrine does not permit disregard of constitutional prohibitions against discriminatory legislation.
American courts have largely abandoned the sterile notion that discrimination in the grant of a privilege is not a denial of equal protection. (See Bagley v. Washington Township Hosp. Dist., 65 Cal.2d 499, 503-504 [55 Cal. Rptr. 401, 421 P.2d 409].) Equal protection of the laws "is a pledge of the protection of equal laws." (Yick Wo v. Hopkins, 118 U.S. 356, 369 [30 L.Ed. 220, 226, 6 S.Ct. 1064].) State law cannot grant privileges or benefits to some and arbitrarily withhold them from others. (Blumenthal v. Medical Examiners, 57 Cal.2d 228, 233 [18 Cal. Rptr. 501, 368 P.2d 101]; Danskin v. San Diego Unified Sch. Dist., 28 Cal.2d 536, 545 [171 P.2d 885]; Watson v. Division of Motor Vehicles, 212 Cal. 279, 284 [298 P. 481].)
A statutory differential in treatment is proper, of course, when it is revelant to a legitimate governmental objective; if it does not involve surrender of a constitutionally protected right, it is presumptively valid. (Whittaker v. Superior Court, 68 Cal.2d 357, 367-368 [66 Cal. Rptr. 710, 438 P.2d 358].) The Attorney General argues that a bequest to a political party cannot be sustained as a charitable or educational trust, a proposition supported by respectable authority. He suggests no consideration of public need, interest or policy which justifies this grant of privilege to a fraternal association serving nothing but its members' pleasure and denies it to an association seeking to disseminate a political ideology. No such considerations exist. Outside the statutory categories of religious, benevolent, fraternal or labor organizations, many unincorporated associations serve useful, even noble, social objectives. One thinks of private organizations engaged in community planning, intergroup amity, conservation and land use and dissemination of various political and social philosophies. A statute which denies one testator the right to bequeath property to such groups and permits another to leave his money to a *487 group in the vague category of "fraternal" associations reaches the apogee of arbitrariness.
Since the Legislature intended that some unincorporated associations be eligible to take by will, the entire listing need not be nullified, but only the restriction which confines eligibility to fraternal associations (in addition to those of the benevolent and religious varieties). (Accounting Corp. of America v. State Board of Accountancy, 34 Cal.2d 186, 192 [208 P.2d 984].)
I would reverse the judgment.
Appellant's petition for a hearing by the Supreme Court was denied September 3, 1970. Peters, J., was of the opinion that the petition should be granted.
NOTES
[1] The parties agreed that the California Branch of the Socialist Labor Party, also known as the Socialist Labor Party of California, was the intended beneficiary named in the will of decedent.
[2] Brissenden, The I.W.W., a Study of American Syndicalism, New York, Columbia University (1919) pages 46-47; Madison, Critics and Crusaders, A Century of American Protest, New York, Frederick Unger Publishing Co. (1959 ed.) pages 449-452.
[1] The offended constitutional principles are those embodied in the equal protection clause of the Fourteenth Amendment to the United States Constitution; the state constitutional demand for uniform operation of general laws (Cal. Const., art. I, § 11); the prohibition against unequal grants of privileges or immunities (Cal. Const., art. I, § 21); the inhibition against special laws when a general statute can be made applicable (Cal. Const., art. IV, § 16).
[2] See, for example, Estate of Burnison, 33 Cal.2d 638, 639-640 [204 P.2d 330]. The doctrine was followed by this court in Estate of Nicely, 235 Cal. App.2d 174 [44 Cal. Rptr. 804]. The writer concurred in the Nicely opinion but no longer accepts its declaration that the "testamentary act is not protected by any constitutional provisions...." (235 Cal. App.2d at p. 184.)