190 Cal.App.3d 279 (1987)
235 Cal. Rptr. 377
Conservatorship of the Person and Estate of DORIS ROMO.
LINDA LAZZARONI et al., as Conservators, etc., Petitioners and Respondents,
v.
JUDITH A. LARSON, as Trustee, etc., Objector and Appellant.
Docket No. A026410.
Court of Appeals of California, First District, Division One.
March 17, 1987.
*280 COUNSEL
Anthony H. Santucci for Objector and Appellant.
William Faulkner, Edward Mahler, Eugene Crawshaw and McManis & Holley for Petitioners and Respondents.
*281 OPINION
ELKINGTON, Acting P.J.
Judith A. Larson (Larson), a daughter of the above-named conservatee, Doris Romo, appeals from (1) the "Order for approval and confirmation of will for Doris Romo (Prob. Code, § 2580) entered in this action on January 25, 1984," and from (2) the "Order of the court entered on May 8, 1984, ordering revocation of the Doris Romo 1981 Trust and return of property by Judith A. Larson, Trustee."
Doris Romo was injured physically and mentally in an automobile accident during the year 1976. She had previously executed her will, disposing of an estate of approximately $1 million. In the year 1981, she executed another will, as well as an inter vivos trust naming Larson as trustee. In 1982, Larson petitioned the probate court to be appointed conservator of the person and estate of her mother, Doris Romo. The petition was opposed by two other daughters and a family member, named Linda Lazzaroni, Jackie Souza, and Mike Romo. Following a hearing, Wells Fargo Bank was named conservator of Doris Romo's estate, and Linda Lazzaroni, Jackie Souza, and Mike Romo, conservators of her person. And proceedings were taken in the conservatorship to set aside the 1981 will and the inter vivos trust of Doris Romo, on the ground that she was incompetent when they were executed. Following a hearing, among other things, the court found and ordered, November 3, 1982 (hereafter the Order of November 3, 1982), as follows:
"1. Doris Romo has been incompetent at all times since her 1976 accident and without legal capacity to execute any documents of any legal significance.
"2. All wills, powers of attorney, and declarations of trust executed by Doris Romo since 1976 are void and are revoked. This includes but is not limited to those documents executed August 20, 1981 making Judith Larson trustee and attorney in fact which are hereby declared void and are also revoked. ...
"13. At an appropriate future time the attorney for the conservators is directed to present to the court an appropriate plan for testamentary disposition of the assets of Doris Romo and for annual gifts to her family."
The same superior court judge who had made the Order of November 3, 1982, presided over the 1984 proceedings leading to the two orders here under appeal. In making the latter orders, and referring to the proceedings on the Order of November 3, 1982, the judge stated:
"There is no question but that since [Doris Romo's] jeep accident in 1976, she had severe brain damage, and has lacked mental capacity to engage in *282 any legal transactions, of any kind or nature, and lacked any understanding, being completely incompetent, and her condition has remained the same.... She is not able to communicate. She sat here during the [1982] trial I had, which lasted over a period of about a month, a matter of days in the session, constantly nodding her head; uttered no words. The only time she reacted to anything was when one of her four daughters got on the witness stand. Mrs. Romo looked at her and began to cry. I forget which daughter it was.... The only person entitled to benefit from the assets today is Doris Romo.... Doris Romo never had the mental capacity. I think the two lawyers involved, who were present when Doris Romo signed these papers, knew that. That is why neither one of them has given me any notes or sheet of scrap paper as to statements made by Doris Romo. They had her sign a voluminous stack of papers most people would have difficulty understanding, and this poor woman made no pretense of understanding anything."
An untimely appeal was taken by Larson from the Order of November 3, 1982, to this court. We thereafter dismissed the appeal for untimeliness of its filing, and the Order of November 3, 1982, is now final and binding on the parties. Thereafter, as noted, other proceedings were taken in Doris Romo's conservatorship proceedings, culminating in the orders presently under appeal. Those appeals were timely.
We first consider the appeal from the "Order of the court entered on May 8, 1984, ordering revocation of the Doris Romo 1981 trust and return of property by Judith A. Larson, Trustee."
It will be remembered that the Order of November 3, 1982, provided that: "Doris Romo has been incompetent at all times since her 1976 accident and without legal capacity to execute any documents of any legal significance [and that] all wills, powers of attorney, and declarations of trust executed by Doris Romo since 1976 are void and are revoked." (Our italics.) At the time of the entry of the instantly considered order of May 8, 1984, the earlier Order of November 3, 1982, had long since become final and binding on the parties. And both orders referred to the same declaration of trust executed by Doris Romo during her incompetency.
(1) It follows that by the Order of November 3, 1982, Doris Romo's declaration of trust was void and revoked. The later order of May 8, 1984, purporting also to declare the same declaration of trust void and revoked, accomplished nothing. It was a brutum fulmen. ("Brutum Fulmen.... A judgment void upon its face [and the record] which is in legal effect no judgment at all, and by which no rights are divested, and from which none can be obtained, and neither binds nor bars anyone." (Black's Law Dict. (4th ed. 1951) p. 243.)
*283 We are unpersuaded that the probate court had no jurisdiction to make the Order of November 3, 1982. Probate Code section 2520 expressly gives that court jurisdiction to make an appropriate order relating to property claimed by a conservator or conservatee, and by another. And ordinarily, a guardian or conservator may take such action as the ward or conservatee might otherwise have taken. Further, were we, arguendo, to assume, as now contended by Larson, that the Order of November 3, 1982, is "void on its face," it would be of no aid to her.
(2) "If a judgment or order meets the statutory test of appealability, i.e., final judgment, or order expressly made appealable, an appeal lies even though it is void. Obviously the appellant is as much aggrieved by a wholly void judgment or order as he is by one which is merely erroneous; and he should have the right to use, and should be encouraged to use, the normal method of review by appeal, instead of certiorari, motion or action for equitable relief, or collateral attack. This general principle of appealability of a void judgment is well established." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 133, p. 142.) Such an appealable void judgment (as assumed) is manifestly subject to the timeliness requirement of notices of appeal.
No merit is seen in Larson's contention that it was improper for the trial court to consider his recollection of Doris Romo's apparent mental condition in the earlier proceedings (see pp. 281-282, ante) with the same parties. (3) "`It is an established principle that courts may take judicial knowledge of their own proceedings in the same case....'" (Gackstetter v. Market Street Ry. Co. (1935) 10 Cal. App.2d 713, 716 [52 P.2d 998].)
No merit is seen in Larson's appeal from the "Order of the court entered on May 8, 1984, ordering revocation of the Doris Romo 1981 Trust and return of property by Judith A. Larson, Trustee."
We advert now to Larson's appeal from the "Order for approval and confirmation of will for Doris Romo (Probate Code, § 2580) entered in this action January 25, 1984."
Pursuant to the probate court's direction (see p. 281, ante) that "[a]t an appropriate future time the attorney for the conservators is directed to present to the court an appropriate plan for testamentary disposition of the assets of Doris Romo and for annual gifts to her family," the conservators produced a "will" which the probate court purported to approve and confirm as the will of Doris Romo. The will was not the will of Doris Romo. It had been prepared by the conservators' attorney, and was substantially the same as the last will of Doris Romo before her incompetency.
*284 (4a) The issue now before us is whether under Probate Code section 2580, a conservator of an incompetent person may, under the probate court's direction, execute the will of the conservatee.
Probate Code section 2580 is found in a portion of that code entitled "Article 10, Substituted judgment." (The term "substituted judgment" appears to relate to a substitution of the conservator's judgment for that of the incompetent conservatee.) The code section is lengthy; it is described by Mr. Witkin in this manner: "Prob.C. 2580 et seq. codify the doctrine of substituted judgment, as previously defined by case law, to permit a court to authorize the transfer of estate property which a conservatee would have transferred had he been competent to act.... Substituted judgment may be exercised when the purpose is to (1) benefit the conservatee or the estate, (2) minimize current or prospective taxes or expenses of estate administration, or (3) provide gifts to those who would be likely beneficiaries of gifts from the conservatee....
"The Law Revision Commission observed that the estate of a conservatee may exceed the amount required to provide for the needs of the conservatee and for the support of those legally entitled to the conservatee's support. In such cases, the estate may be subjected to income, inheritance or estate taxes that a reasonably prudent person would minimize through estate planning techniques. There may also be relatives, friends, charities, or other objects of bounty that the conservatee supported before the conservatorship was established.... The new statute permits a conservator, with court authorization, to minimize taxes through such estate planning techniques as making gifts of principal or income from the estate, exercising or releasing a conservatee's powers as donee of a power of appointment, and creating revocable and irrevocable trusts of the property of the estate.... The conservator may make other decisions and take other actions consistent with the proper management and control of the estate....
"The conservator or other interested person may file a petition for an order authorizing or requiring the conservator to take a proposed action to benefit the conservatee or the estate, or for estate planning or gift giving purposes.... A long but nonexclusive listing of the types of actions which may be proposed in the petition is set forth in Prob.C. 2580(b)." (7 Witkin, Summary of Cal. Law (8th ed. 1984 supp.) Wills and Probate, §§ 671A, 672A, pp. 470-471, italics in original.)
It is significant that the "long but nonexclusive listing" described by Mr. Witkin does not list the making of a conservatee's will by a conservator. If such were the legislative purpose it must reasonably be presumed that the Legislature would have said so.
*285 (5) And, "`where a statute enumerates things upon which it is to operate it is to be construed as excluding from its effect all those not expressly mentioned.'" (Capistrano Union High School Dist. v. Capistrano Beach Acreage Co. (1961) 188 Cal. App.2d 612, 617 [10 Cal. Rptr. 750, 92 A.L.R.3d 349].)
We note other relevant provisions of the Probate Code.
Section 6100 today: "An individual 18 or more years of age who is of sound mind may make a will."
Section 20, at the here pertinent time: "Every person of sound mind, over the age of 18 years, may dispose of his or her separate property, real and personal, by will...."
No past or present legislative disposition is seen to allow an incompetent person's will to be executed by a conservator under Probate Code section 2580. (6) "`The right to make a will ... is purely statutory; subject to the complete control by the Legislature....'" (Estate of Carlson (1970) 9 Cal. App.3d 479, 481 [88 Cal. Rptr. 229, 41 A.L.R.3d 825].)
And surely, reason tells us that, as here, the will of a conservatee executed at a time when he or she was of sound mind, is to be preferred over a will prepared by another during the period of the testator's incompetency.
(4b) We hold that Probate Code section 2580 does not permit a conservatee's will to be made and executed by the conservator, his or her attorney, by the probate court, or by any or all of them. The contrary order must be reversed.
It has become unnecessary to consider other contentions and points raised by the parties.
The "Order of the court entered on May 8, 1984, ordering revocation of the Doris Romo 1981 Trust and return of property by Judith A. Larson, Trustee," is affirmed. The "Order for approval and confirmation of will for Doris Romo (Probate Code § 2580)" is reversed. The respondent conservators will recover their costs of appeal.
Newsom, J., and Holmdahl, J., concurred.