[No. B022218. Second Dist., Div. Four. July 13, 1988.]

ROBERT E. SANGSTER, Plaintiff and Appellant, v. CALIFORNIA HORSE RACING BOARD, Defendant and Respondent;
WILLIAM GUMPERT et al., Real Parties in Interest and Respondents.

**COUNSEL**

Craigo & Zimmermann, Richard W. Craigo and Scott Z. Zimmermann for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Henry G. Ullerich, Deputy Attorney General, for Defendants and Respondents.

Gibson, Dunn & Crutcher and Robert Forgnone for Real Parties in Interest and Respondents.

## OPINION

**WOODS, P. J.**—Appellant Robert E. Sangster (Sangster) appeals from a judgment denying his petition for a writ of mandate under Code of Civil Procedure section 1094.5. Respondents are the California Horse Racing Board (the Board), and William Gumpert and others (Gumpert) who were the real parties in interest in the proceedings below.

The facts are as follows:[1] Sangster owns a horse named The Noble Player. The Noble Player entered the San Matean Handicap run at Bay Meadows Race Track on September 15, 1984. The San Matean carried a statutory purse of $35,000 "added" plus a $5,000 "Breeders' Cup Award" given by the Breeders' Cup, Ltd., a private organization in Lexington, Kentucky.

The purpose of the Breeders' Cup award was "to create new fan interest in racing and promote improvement of the breed." The awards were to be "distributed by [the] host track and included in the published winnings of the horse."[2] An owner who wished his horse to be eligible for the award paid a certain fee for that purpose.

The Noble Player won the San Matean. As first place finisher, his portion of the statutory purse was $22,400. Additionally, his portion of the Breeders' Cup award was $2,700, for a total of $25,100. This amount was shown as the value of the purse to The Noble Player by the Daily Racing Form which, by Board regulation, may be used to substantiate the official records. (Cal. Code Regs., tit. 4, ch. 4, § 1610.) It was also the amount credited to Sangster's account by the paymaster of the San Matean. On the official record of The Noble Player's earnings, on the reverse side of his Jockey Club Registration Certificate, he was erroneously credited with only the statutory purse amount, $22,400.[3]

After his victory at the San Matean, The Noble Player was entered in the Henry P. Russell Handicap, a race conducted under the auspices of the Oak Tree Racing Association. The Russell Handicap was restricted to horses

---

[1] Sangster states that the facts are undisputed and then proceeds to set them forth in a light favorable to himself. However, as our review of the trial court's factual determinations is governed by the substantial evidence test (*So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.* (1950) 36 Cal.2d 167, 175 [223 P.2d 1]), the evidence must be viewed in the light most favorable to the judgment.

[2] This description of the Breeders' Cup award was included in the Oak Tree Condition Book. The Oak Tree Racing Association conducted the race, the results of which are at issue in this case.

[3] Apparently, the official record was filled out by an inexperienced race track official unfamiliar with the Breeders' Cup program.

three years old and up which had not won $25,000 in 1984. This latter condition was further defined as a race worth $25,000 to the winner.

The Russell Handicap was run at the Santa Anita Race Track on November 5, 1984, and The Noble Player won.[4] The second place finisher was Trakady, a horse owned by respondent Gumpert. The Noble Player's share of the purse for his first place finish was $38,000. Trakady's earnings were $12,000.

Ten days after the Russell Handicap, an employee at Santa Anita Race Track read in a magazine article that The Noble Player had earned $25,100 at the San Matean. He brought the article to the attention of an Oak Tree official. In turn, the official alerted the board of stewards.[5]

The stewards conducted an investigatory hearing on November 16, 1984, at which John Gosden, The Noble Player's trainer, and Gumpert were present. On November 17, the stewards conducted a second hearing during which they questioned race track officials from San Mateo and learned how The Noble Player's earnings for the San Matean had been erroneously calculated. The stewards' attempts to conduct a formal hearing with all the principals present were frustrated by scheduling problems. Instead, the stewards requested written briefs by Sangster and Gumpert on the basis of which they issued ruling 23, disqualifying The Noble Player and revising the order of the finish to make Trakady the declared winner of the Russell Handicap. Sangster appealed the decision of the stewards to the Board.

A hearing was then conducted by Commissioner Felton of the Board as referee. Attorneys for both parties were present and witnesses were called and examined. Commissioner Felton issued a proposed decision upholding the ruling of the stewards. The commissioner's proposed decision was adopted by the Board. After an unsuccessful motion for reconsideration, Sangster sought a writ of mandate in the superior court under Code of Civil Procedure section 1094.5. The petition was denied, after hearing, and this appeal ensued. We affirm.

## I

Initially, Sangster argues that the Board was without jurisdiction to disqualify The Noble Player because of a rule requiring any protest or

---

[4] Sangster makes much of the fact that the Oak Tree Racing Association accepted The Noble Player's nomination to the Russell Handicap. Apparently, Oak Tree's eligibility card on The Noble Player showed earnings of $22,400 for his finish in the San Matean, based on the erroneous entry on his official record by racing officials there. The eligibility card was subsequently corrected to reflect the correct amount of The Noble player's winnings.

[5] The stewards are race track officials to whom authority is delegated by the Board to oversee the conduct of race meetings. (Bus. & Prof. Code, § 19440.)

complaint against a horse to be made within 72 hours of the race. Here, the investigation into The Noble Player's eligibility was not commenced until 10 days after the Russell Handicap. The Board rejected application of the 72-hour rule, relying instead upon other provisions of its administrative rules.

■ Statutory construction is, of course, a matter for the courts rather than administrative agencies. However, an agency's construction of its own regulations "is entitled to great weight unless clearly erroneous or unauthorized. [Citations.]" (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244].) ■ Additionally, a primary rule of statutory construction is to "construe a statute to promote its purpose, render it reasonable, and avoid absurd consequences. [Citation.]" (*In re Atiles* (1983) 33 Cal.3d 805, 810, fn. 4 [191 Cal.Rptr. 452, 662 P.2d 910].)

The Board disqualified The Noble Player based on two rules, 1750 and 1592.[6] Rule 1750 authorizes the stewards to "make diligent inquiry or investigation into any complaint, objection or protest made either upon their own motion, by any racing official, or by any other person empowered by this chapter to make such complaint, protest or objection." The Board also relied on rule 1592: "Any horse ineligible to be entered for a race, or ineligible to start in any race, who competes in such race may be disqualified and the stewards may discipline anyone responsible therefor." Neither of these rules has a 72-hour requirement.[7]

The 72-hour rule to which Sangster refers is contained in rule 1754, providing: "A protest against any horse which has started in a race, shall be made to the stewards in writing, signed by the protestor, within 72 hours of the race exclusive of non-racing days of the meeting."[8] The "protestor" referred to in rule 1754 is, however, further defined in rule 1756. Rule 1756 provides: "A jockey, driver, trainer or owner of a horse which is entered for or is a starter in a race is empowered to file an objection or protest against any other horse in such race . . . ." The stewards and other race track officials are not included in this list.

---

[6] All references to rules are to title 4, chapter 4 of the California Code of Regulations.

[7] The court below also found the 72-hour rule inapplicable. It relied on rule 1592, and rule 1765 which states in part: "Complaints filed with the stewards in writing, by any person which allege misconduct or a violation of this chapter or the Horse Racing Law . . . shall be investigated by the stewards or the Board or its investigators when there is sufficient reason to believe that such complaints are bonafide and subject to verification." Apparently, the court felt that since rule 1754 expressly applies only to "protests," it does not apply to "complaints." This is but an alternative analysis to that which we set forth herein, under the general rule *expressio unius est exclusio alterius.*

[8] The 72-hour rule does not operate where the protest is based upon fraud or willful misconduct. (Rule 1757.) Neither was alleged in this case.

■ It is well settled that "'"where a statute enumerates things upon which it is to operate it is to be construed as excluding from its effect all those not expressly mentioned."'" [Citation.]" (*Conservatorship of Romo* (1987) 190 Cal.App.3d 279, 285 [235 Cal.Rptr. 377], quoting *Capistrano Union High School Dist.* v. *Capistrano Beach Acreage Co.* (1961) 188 Cal.App.2d 612, 617 [10 Cal.Rptr. 750, 92 A.L.R.2d 349].) Moreover, in construing a statute, it is not the court's function to expand the statute's definition nor include in it persons whom the law-making body omitted. (*Los Angeles Unified School Dist.* v. *Workers' Comp. Appeals Bd.* (1984) 150 Cal.App.3d 823, 827 [198 Cal.Rptr. 116].) ■ In light of these applicable rules of statutory construction, we are not inclined to expand the scope of rule 1754 to include the stewards, other race track officials or other persons within its purview.[9]

Our conclusion is strengthened by the existence of two other rules, rule 1592 and rule 1530, which confer broad powers upon the stewards to determine questions of eligibility. Rule 1592, as previously observed, permits disqualification of ineligible horses from a race without reference to any time limitation within which the action must be taken. Rule 1530 allows the stewards to determine any case "which may not be covered by the Rules and Regulations of the Board . . . in conformity with justice and in the interest of racing."[10]

Taken together, these rules confer a broad flexibility and discretion to resolve questions of eligibility which may not have been specifically contemplated by existing rules. To curb this authority, by reading into it the 72-hour time limitation contained in rule 1754, would not promote this objective, nor, as we have seen, is it justified by the language of section 1754. Nor is such limitation justified by public policy. ■ The Board is a constitutional agency possessing power to "regulate almost every aspect of legalized horse racing and wagering." (*Flores* v. *Los Angeles Turf Club* (1961) 55 Cal.2d 736, 745-746 [13 Cal.Rptr. 201, 361 P.2d 921].) In the absence of compelling circumstances, the Board should be permitted to carry out its

---

[9] Sangster argues that omitting race track officials from the scope of rule 1754 leads to the "absurd" result that the time allowed within which to act upon a question of eligibility will turn upon whether the complaining party is a participant in the race who has a financial stake in the results or a race track official who does not. We do not regard this distinction as absurd.

[10] Sangster makes much of the fact that rule 1592 is placed in a different article than 1750, whereas rule 1754 is in the same article as 1750. The placement of these rules in different sections is not determinative, however, in light of the settled principle that " '[f]or purposes of statutory construction, the various pertinent sections of [the statute] must be read together and harmonized if possible.' [Citation.]" (*Sullivan* v. *Superior Court* (1972) 29 Cal.App.3d 64, 72-73 [105 Cal.Rptr. 241], quoting *Cannon* v. *American Hydrocarbon Corp.* (1970) 4 Cal.App.3d 639, 648 [84 Cal.Rptr. 575].)

functions without undue judicial interference. (See, e.g., *Youst* v. *Longo* (1987) 43 Cal.3d 64, 78 [233 Cal.Rptr. 294, 729 P.2d 728].) Such compelling circumstances are not before us.

■■■ We recognize there is some merit in the argument raised by Sangster that the 72-hour rule promotes finality in race results. Now that this matter has been called to the attention of the Board, it may wish to adopt a rule of limitations applicable to such cases as that presented here. We merely hold that rule 1754 is not applicable, and that the Board can therefore be held to have acted within a reasonable time.

## II

■■■ Sangster's second argument is that the Board's decision in his case constituted surreptitious rulemaking in violation of the Administrative Procedure Act. (Gov. Code, § 11346 et seq.) This argument is without merit.

The Board has both a rulemaking or legislative function and an adjudicatory or judicial function. (Bus. & Prof. Code, § 19440, subds. (1) and (3).) ■■■ The distinction between these two administrative functions is described in *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 (at p. 35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]): "Generally speaking, a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts. [Citations.]" In short, the basic element of the adjudicatory process is "the application of established criteria to existing facts." (*Pacifia Corp.* v. *City of Camarillo* (1983) 149 Cal.App.3d 168, 176 [196 Cal.Rptr. 670].)

■■■■■ In light of these definitions, it is clear that the Board's determination of Sangster's case involved adjudication, not rulemaking.[11]

Rule 1621, in pertinent part, defines winnings as follows: "The winnings of a horse consist of its gross winnings. Winnings during the year shall include all prizes from the first of January preceding the time appointed for the start and include races in any country, and include walkover purses.

---

[11] Sangster's argument is further weakened by his recourse to Code of Civil Procedure section 1094.5 in seeking a writ of administrative mandamus. It is well established that only adjudicatory decisions of an agency are subject to review under this provision. (*Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 814, fn. 9 [140 Cal.Rptr. 442, 567 P.2d 1162].) Recourse to this section is tantamount to a concession that the Board's action was adjudicatory.

Winning of a fixed sum means winning it in any one race unless otherwise specified in the conditions of the race. . . ."

The issue of whether The Noble Player's Breeders' Cup earnings counted toward his eligibility for the Russell Handicap has consistently been a factual dispute. As it was presented to the stewards, the issue was whether Sangster could rely on the error made by Bay Meadows' racing officials in calculating The Noble Player's San Matean winnings for the purpose of determining eligibility for the Russell Handicap. This question did not require the enunciation of a new rule. It was simply a question of whether Sangster knew or should have known, in light of the relevant facts, that The Noble Player's San Matean earnings made him ineligible for the Russell Handicap.[12]

Sangster's appeal of the stewards' ruling to the Board also involved a factual question: whether the Breeders' Cup award was correctly viewed as part of The Noble Player's winnings as that term is used in rule 1621. This was presented to and decided by the referee as a purely factual issue. No new rule was sought or announced.[13] It is clear, therefore, that the proceedings regarding The Noble Player's eligibility have been adjudicatory. ▮ The issue before us, then, is not whether rulemaking procedures were followed, since they were not involved, but only if the Board's decision is supported by substantial evidence. (*So. Cal. Jockey Club* v. *Cal. etc. Racing Bd., supra,* 36 Cal.2d at p. 175.) We find that it is.

Darrell Vienna, who trained Tradaky, the second place finisher at the Russell Handicap, testified that it was clear to him from Breeders' Cup promotional literature that the Breeders' Cup premiums were to be considered part of a horse's winnings for purposes of eligibility. Additionally, reference to the Breeders' Cup premium in the Oak Tree Condition Book stated that the award was to be distributed by the track and "included in the published winnings of the horse." The Noble Player's winnings for the San Matean were published in the Daily Racing Form, designated as a supplemental official record by the Board's rules, as $25,100, and clearly included the Breeders' Cup premium.[14] Finally, the Breeders' Cup award

---

[12] Sangster's arguments that "winnings" may not be the same as "worth," as that term was used by the Oak Tree Condition Book, is no more than semantic hairsplitting without citation to any authority which would justify such a fine distinction.

[13] Indeed, Sangster never made his Administrative Procedure Act argument to the Board, but waited until his application for writ of mandate to the superior court.

[14] Sangster argues that the Breeders' Cup premium was not intended to be part of the winnings of a horse for eligibility purposes because a breeder's award given to owners of California-bred horses is not counted for this purpose. The evidence which the Board chose to believe, however, was that the Breeders' Cup premium was meant to be counted toward eligibility.

won by The Noble Player at the San Matean was credited to his account by the paymaster.

On this basis, the Board found that The Noble Player's earnings exceeded the $25,000 eligibility restriction for the Russell Handicap. The evidence supports this conclusion.

The judgment is affirmed. Respondents to recover costs.

George, J., and Goertzen, J., concurred.