TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

————————————————————————

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 94-602 |
| of | : | |
| | : | October 6, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

————————————————————————————————————————————

THE HONORABLE JAMES L. McBRIDE, COUNTY COUNSEL, VENTURA COUNTY, has requested an opinion on the following question:

Are cities, counties, and special districts "businesses" required to prepare hazardous materials release response plans under the provisions of the Hazardous Materials Release Response Plans and Inventory Act?

CONCLUSION

Cities, counties, and special districts are not "businesses" required to prepare hazardous materials release response plans under the provisions of the Hazardous Materials Release Response Plans and Inventory Act.

ANALYSIS

The Hazardous Materials Release Response Plans and Inventory Act (Health & Saf. Code, §§ 25500-25547; "Act")[1] was enacted in 1985 (Stats. 1985, ch. 1165, § 1) to protect the public health and safety and the environment in connection with the handling and release or threatened release of hazardous materials. (§ 25500; *County of Fresno* v. *State of California* (1991) 53 Cal.3d 482, 485;

_____

[1]All section references herein are to the Health and Safety Code.

1.                                            94-602

70 Ops.Cal.Atty.Gen. 146, 146-148 (1987).)  Under the Act's provisions, local public agencies collect information concerning hazardous materials handled by businesses in the state and make the information available as needed.  (70 Ops.Cal.Atty.Gen, *supra*, 148.)  Each county is responsible for implementing the Act's requirements, except that a city may assume responsibility within its own jurisdiction.  (§ 25502, subds. (a), (b).)  A county, or a city which assumes responsibility, administers the Act by designating one of its departments, offices, or other agencies as the "administering agency." (§ 25502, subd. (c).)

Any "business" which handles hazardous materials is required to establish and implement a "business plan" for an emergency response to a release or threatened release of hazardous materials (§ 25503.5, subd. (a)), and must submit the plan to the local administering agency for review (§ 25505).  The administering agency is required to maintain records of all business plans and prepare an "area plan" for an emergency response to an actual or threatened release of hazardous materials. (§ 25503, subd. (c).)

We are asked to determine whether cities, counties, and special districts are included within the Act's definition of a "business," thus requiring them to prepare hazardous materials release response plans.  We conclude that these public agencies may not be considered businesses for purposes of the Act's requirements.

A "business" subject to the Act's provisions is defined by section 25501, subdivision (d) to mean:

"... an employer, self-employed individual, trust, firm, joint stock company, corporation, partnership, or association.  For purposes of this chapter, `business' includes a business organized for profit and a nonprofit business."

It is further provided in section 25501.4, subdivision (a) that:

"Notwithstanding subdivision (c) of section 25501, `business' also includes the federal government, to the extent authorized by federal law, or any agency, department, office, board, commission, or bureau of state government, including, but not limited to, the campuses of the California Community Colleges, the California State University, and the University of California."[2]

These two provisions comprise the entire definition of a "business" for purposes of the Act.  Section 25501.4 was added in 1988 (Stats. 1988, ch. 1585, § 2), several years after the enactment of section 25501.  It broadened the definition of a "business" to include state governmental entities which in 70 Ops.Cal.Atty.Gen. 146, *supra*, we concluded did not constitute businesses as defined in section 25501.

---

[2]When section 25501.4 was enacted in 1988, the definition of "business" was contained in subdivision (c) of section 25501; in 1990 (Stats. 1990, ch. 1662, § 2), subdivision (c) became subdivision (d).

Our 1987 opinion relied on several factors which are relevant to the question presently before us. First, we noted that "[a]s a general rule, public agencies are not considered to be bound by general words of a statute which set forth duties or which limit rights and interests unless they are included within its directive, either expressly or by necessary implication, and their being included does not result in an infringement upon their sovereign powers." (70 Ops.Cal.Atty.Gen., *supra*, 149, citing, inter alia, *Regents of University of California* v. *Superior Court* (1976) 17 Cal.3d 533, 536.) Second, in defining a "business," the Legislature used the seemingly broad term "employer" in conjunction with more restrictive terms representing various forms of private business organizations. We reasoned that under the doctrine of *noscitur a sociis*, whereby the meaning of a word may be ascertained by reference to the meanings of words associated with it (*Texas Commerce Bank* v. *Garamendi* (1992) 11 Cal.App.4th 460, 471, fn. 3), the Legislature used the term "employer" in the more limited context of the other associated terms. (70 Ops.Cal. Atty.Gen., *supra*, 150-151.) Third, we observed that, when the legislation was first proposed in 1985, it did not include public entities in the definition of a "business." However, at one point during the legislative process, Assembly Bill No. 2185 was amended to define a "business" as:

> ". . . an employer, self-employed individual, trust, firm, joint stock company, corporation, partnership, association, *city, county, district, and the state, or any department or agency thereof*. For purposes of this chapter, a business includes a business organized for profit and a nonprofit business." (Emphasis added.)

We were thus able to presume that "if the word `employer' would have already sufficed to embrace governmental or public employers, the amendment would not have been necessary to bring those public bodies within the definitional rubric of `business.'" (*Id.*, at p. 152.) Furthermore, prior to the passage of the bill, the definitional language was again changed, removing all reference to public entities, and thus leading us to observe that "[w]hen . . . the Legislature rejects language from a bill, it is most persuasive to the conclusion that the law as enacted should not be construed to contain it." (*Ibid.*, citing, inter alia, *Stroh* v. *Midway Restaurants Systems, Inc.* (1986) 180 Cal.3d 1040, 1055.)

When the Legislature broadened the definition of a "business" for the purposes of the Act by adding section 25501.4 in 1988, it included the phrase "[n]otwithstanding subdivision (c) of section 25501." Such phraseology indicates that the term "business" as defined in section 25501 was not intended to include public entities. Thus, in enacting section 25501.4, subdivision (a), the Legislature found it necessary to provide specific language whereby certain public entities would be included within the definition of a "business." Section 25501.4 is limited by its terms to "the federal government . . . or any agency of state government . . . ." As stated in *Sangster* v. *California Horse Racing Board* (1988) 202 Cal.App.3d 1033, 1039: "It is well settled that `"'where a statute enumerates things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned.'" [Citation.]' [Citations.] Moreover in construing a statute, it is not the court's function to expand the statute's definition nor include in it persons whom the law-making body omitted. [Citation.]" Accordingly, cities, counties, and special districts are omitted from the definition of "business" as set forth in sections 25501 and 25501.4.

If any doubt remained as to our conclusion, the Legislative Counsel's Digest explained the purposes of the 1988 enactment of section 25501.4 as follows:

"Existing law requires any business handling specified amounts of hazardous materials to establish and implement a business plan for emergency response to a release or threatened release of a hazardous material. *Existing law does not include public agencies within the definition of business.* . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"This bill would specify that, notwithstanding the definition of business, the term also includes any agency, department, office, board, commission, or bureau of state government, and the federal government, to the extent authorized by federal law . . . ." (Emphasis added.)

In *Victoria Groves Five* v. *Chaffey Joint Union High School District* (1990) 225 Cal.App.3d 1548, 1555, the court observed: "The Legislative Counsel's Digest is a proper resource to determine the intent of the Legislature." (See also *Crowl* v. *Commission on Professional Competence* (1990) 225 Cal.App.3d 334, 347.)

We conclude that cities, counties, and special districts do not meet the definition of a "business" for purposes of the Act and therefore are not subject to the requirement of preparing a hazardous materials release response plan. Of course, counties and cities assuming responsibility for administering the Act's provisions are required to prepare area plans for an emergency response to an actual or threatened release of hazardous materials.

* * * * *