TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 95-1003 |
| of | : | |
| | : | July 8, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| MAXINE P. CUTLER | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE DAVID KNOWLES, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May a county charter amendment prohibit the county from approving a development project unless a demonstrable method exists for financing the roads, schools, water, and sewer facilities necessary to serve the project?

CONCLUSION

A county charter amendment may not prohibit the county from approving a development project unless a demonstrable method exists for financing the roads, schools, water, and sewer facilities necessary to serve the project.

ANALYSIS

Section 4 of article XI of the Constitution grants charter counties the authority to create and operate their own local government and define the powers of government within the limits set out by the Constitution. (*Dibb* v. *County of San Diego* (1994) 8 Cal.4th 1200, 1206.) Such authority is limited to matters concerning the structure and operation of local government. (*Id.*, at p. 1207.) "Charter counties have only such legislative authority as has been expressly conferred by the Constitution and laws of the state. If these sources are silent as to the delegation of authority, the authority remains with the Legislature." (*County of Sacramento* v. *Fair Political Practice Com.* (1990) 222 Cal.App.3d 687, 690.)

1. 95-1003

A charter amendment has been proposed for a county as follows:

"The county shall not approve a development project unless a demonstrable method exists for financing the roads, schools, water and sewer facilities necessary to serve the development project.

"As used above:

"1. `Development Project' means any residential land subdivision requiring a tentative and final subdivision map under the Subdivision Map Act or any other project that, if approved, would create more than four residential dwelling units.

"2. `Demonstrable Method for Financing' means one or more methods of financing that are reasonably calculated to meet or exceed the costs of providing the roads, schools, water or sewer facilities necessary to serve the `Development Project', and:

"a. for which the project sponsor or the affected government entity has or has made a present, firm and binding commitment; or

"b. that require approval of a public agency, which approval has been granted, for issuance of a debt instrument; or

"c. that is a surety bond."

The issue to be resolved is whether a constitutional provision or state statute has conferred authority upon the county to adopt the proposed charter amendment. We conclude that no authority has been so conferred upon the county.

Section 4 of article XI of the Constitution provides:

"County charters shall provide for:

"(a) A governing body of 5 or more members, elected (1) by district or, (2) at large, or (3) at large, with a requirement that they reside in a district. Charter counties are subject to statutes that relate to apportioning population of governing body districts.

"(b) The compensation, terms, and removal of members of the governing body. If a county charter provides for the Legislature to prescribe the salary of the governing body, such compensation shall be prescribed by the governing body by ordinance.

"(c) An elected sheriff, an elected district attorney, an elected assessor, other officers, their election or appointment, compensation, terms, and removal.

"(d)   The performance of functions required by statute.

"(e)   *The powers and duties of governing bodies and all other county officers*, and for consolidation and segregation of county officers, and for the manner of filling all vacancies occurring therein.

"(f)   The fixing and regulation by governing bodies, by ordinance, of the appointment and number of assistants, deputies, clerks, attaches, and other persons to be employed, and for the prescribing and regulating by such bodies of the powers, duties, qualifications, and compensation of such persons, the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal.

"(g)   Whenever any county has framed and adopted a charter, and the same shall have been approved by the Legislature as herein provided, the general laws adopted by the Legislature in pursuance of Section 1(b) of this article, shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, and for which provision is made therein, except as herein otherwise expressly provided.

"(h)   *Charter counties shall have all the powers that are provided by this Constitution or by statute for counties.*"   (Italics added.)

Examining these provisions, we find that subdivisions (e) and (h) require individual analysis in resolving the issue presented.

Looking first at subdivision (h), we note that the proposed charter amendment refers to "any residential land subdivision requiring a tentative and final subdivision map under the Subdivision Map Act."   The Subdivision Map Act (Gov. Code, §§ 66410-66499.37; "Act")[1] establishes "statewide criteria for land development planning, and delegates authority to cities and counties to regulate the details of subdivisions."   (*Benny* v. *City of Alameda* (1980) 105 Cal.App.3d 1006, 1010.)   It empowers cities and counties to regulate by ordinance the design and improvement of subdivisions through a process of approving tentative and final or parcel subdivision maps.   (§§ 66411, 66420, 66421.).   The Act's purposes are to "facilitate orderly community development by regulating and controlling the design and improvement of subdivisions and to protect the buying public from exploitation" (*South Central Coast Regional Com.* v. *Charles A. Pratt Construction Co.* (1982) 128 Cal.App.3d 830, 845), as well as to "assure proper improvements are made so the area does not become an undue burden on the taxpayer" (*Bright* v. *Board of Supervisors* (1977) 66 Cal.App.3d 191, 194).

With respect to tentative subdivision maps, the Act authorizes cities and counties to require, as a condition for approving a tentative map, that the subdivider agree to dedicate real property for public purposes, streets, public utility easements, and sewers (§ 66475), construct necessary public

---

[1] All section references are to the Government Code unless otherwise indicated.

improvements for the subdivision, such as streets and utilities (§ 66419), pay fees for the construction of drainage and sewer facilities (§ 66483), and dedicate land necessary for the construction of elementary schools (§ 66478).[2] Tentative maps are subject to disapproval under the terms of section 66474:

> "A legislative body of a city or county shall deny approval of a tentative map, or a parcel map for which a tentative map was not required, if it makes any of the following findings:
>
> "(a)  That the proposed map is not consistent with applicable general and specific plans as specified in Section 65451.
>
> "(b)  That the design or improvement of the proposed subdivision is not consistent with applicable general and specific plans.
>
> "(c)  That the site is not physically suitable for the type of development.
>
> "(d)  That the site is not physically suitable for the proposed density of development.
>
> "(e)  That the design of the subdivision or the proposed improvements are likely to cause substantial environmental damage or substantially and avoidably injure fish or wildlife or their habitat.
>
> "(f)  That the design of the subdivision or type of improvements is likely to cause serious health problems.
>
> "(g)  That the design of the subdivision or the type of improvements will conflict with easements, acquired by the public at large, for access through or use of property within the proposed subdivision. . . ."

Thus the Legislature has not included the absence of an infrastructure financing guarantee as a ground for disapproving a tentative map application. It is well settled that "`"where a

---

[2] The Schools Facilities Act (§§ 65970-65981) authorizes governing boards of school districts to impose school impact fees subject to certain monetary limitations. (*Grupe Development Co.* v. *Superior Court* (1993) 4 Cal.4th 911, 917.) This legislation is applicable to residential subdivisions (§ 65972), and a city or county may require the dedication of land and payment of fees for school facilities as a condition to subdivision map approval when certain conditions are met (§ 65974). A county may also consider the adequacy of school facilities when considering zoning changes necessary for subdivision approval. (*William S. Hart Union High School Dist.* v. *Regional Planning Com.* (1991) 226 Cal.App.3d 1612, 1625; *Mira Development Corp.* v. *City of San Diego* (1988) 205 Cal.App.3d 1201, 1217-1218.) However, a county's zoning ordinances may not add additional merger requirements to those required by section 66451.11. (*Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 760.)

statute enumerates things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned. [Citation]'"" (*Conservatorship of Romo* (1987) 190 Cal.App.3d 279, 285; see also *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160-1161). Moreover, in construing a statute, it is not our function to expand the statute's scope. (See *Sangster* v. *California Horse Racing Bd.* (1988) 202 Cal.App.3d 1033, 1039.)

As for final subdivision maps, the Legislature has authorized a city or county to require, as a condition to final map approval, that the subdivider enter into a subdivision improvement agreement, guaranteed by adequate security, for the completion of any improvements required as conditions to the tentative map that have not been completed at the time of final map approval. Section 66462 provides:

"(a) If, at the time of approval of the final map by the legislative body, any public improvements required by the local agency pursuant to this division or local ordinance have not been completed and accepted in accordance with standards established by the local agency by ordinance applicable at the time of the approval or conditional approval of the tentative map, the legislative body, as a condition precedent to the approval of the final map, shall require the subdivider to enter into one of the following agreements specified by the local agency:

"(1) An agreement with the local agency upon mutually agreeable terms to thereafter complete the improvements at the subdivider's expense.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) The local agency entering into any agreement pursuant to this section shall require that performance of the agreement be guaranteed by the security specified in Chapter 5 (commencing with Section 66499)."

The Legislature has authorized five kinds of security, at the county's option or with the county's approval, to guarantee performance of the required subdivision improvements, including bonds, deposits of money or negotiable bonds, instruments of credit, property liens, and security interests in real property. (§ 66499.)[3]

We also note that with respect to the adoption of a specific plan by a city or county, section 65451 provides in part:

---

[3] The Legislature has also provided for the form of the bond for securing performance to the city or county (§ 66499.1); form of the bond for the security of laborers and materialmen (§ 66499.2); certain costs, expenses, and fees to be included in the amount of the security (§ 66499.4); reduction of the security if the improvements are financed pursuant to a special assessment proceeding (§ 66499.5); exemption of the security from enforcement of a money judgment until the obligation secured is performed to the satisfaction of the local agency (§ 66499.6); release of the security upon completion and acceptance of the required work (§ 66499.7); restrictions on release of the security pending approval of another agency when required (§ 66499.8); and liability upon the security (§ 66499.9).

"(a)  A specific plan shall include a text and a diagram or diagrams which specify all of the following in detail:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2)  The proposed distribution, location, and extent and intensity of major components of public and private transportation, sewage, water, drainage, solid waste disposal, energy, and other essential facilities proposed to be located within the area covered by the plan and needed to support the land uses described in the plan.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(4)  A program of implementation measures including regulations, programs, public works projects, and financing measures necessary to carry out paragraphs (1), (2), and (3).

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

A review of these statutory enactments discloses the absence of any authority for adopting the charter amendment in question.  Rather, the Legislature has authorized various other means for assuring that the necessary infrastructure is financed and completed with respect to a development project.[4]  We conclude that the proposed charter amendment would not be authorized under the terms of subdivision (h) of section 4 of article XI of the Constitution.

As for a charter county's authorization to provide for the "powers and duties of governing bodies and all other county officers" (Cal. Const., art. XI, § 4, subd. (e)), we find this authorization to be inapplicable here as well.  In *Dibb* v. *County of San Diego*, *supra*, 8 Cal.4th at 1211, the Supreme Court observed:

"Although . . . charter counties lack the `*municipal affairs*' authority of charter cities, . . . they nevertheless share much of the authority exercisable by charter cities over the *structure and operation* of their local government.  Accordingly, to the extent the power at issue is properly grounded on the county's authority to provide for the `powers and duties' of its local officers and the operation of its local government, it is within the competence of the charter."

The court noted that an earlier case, *Reuter* v. *Board of Supervisors* (1934) 220 Cal. 314, had construed the type of power conferrable under subdivision (e) as being that power which is "regular and necessary" to the performance of official duties.  (*Id*., at p. 1216.)  Relying on *Reuter*, the court ruled that subdivision (e) refers to a power which "is reasonably necessary to the full accomplishment of the legitimate goals of the legislation" in question.  (*Id*., at pp. 1216-1217.)  The court upheld the use of

---

[4] The Legislature has in fact refused to enact legislation similar to the proposed charter amendment requirements.  (See, e.g., Assem. Bill No. 96 (1995-1996 Reg. Sess.) § 1.)

the subpoena power by a civilian review board established by county charter, citing "*City of Nevada* v. *Benjamin* (1976) 144 N.J. Super. 58 [`Without the power to subpoena witnesses, hearings before a [civilian review board] would be inadequate' and ineffective] . . . ."  (*Id.*, at p. 1217.)

Unlike in *Dibb*, the proposed charter amendment here would confer a power that is unnecessary for county officers to fulfill their duties.  As previously discussed, numerous other means have been furnished by the Legislature to accomplish the goals of the proposed amendment.  The amendment would interfere with the legitimate purposes of the Act, with its precise scope and terms, as determined by the Legislature.  We conclude that a county's authority to adopt the proposed charter amendment has not been conferred under the terms of subdivision (e) of section 4 of article XI of the Constitution.

Finding no other source for authorizing the charter amendment in question, we conclude that a county charter amendment may not prohibit the county from approving a development project unless a demonstrable method exists for financing the roads, school, water, and sewer facilities necessary to serve the project.

* * * * *